[Crim. No. 1301. Fifth Dist. May 21, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY ARTHUR SNEED, Defendant and Appellant.

## COUNSEL

Martin & Cole, Dennis R. Watt and William A. Martin for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Edward W. Bergtholdt, Arnold O. Overoye, Eddie T. Keller and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—Gregory Arthur Sneed appeals from a judgment of conviction of unlawful cultivation of marijuana in violation of Health and Safety Code section 11530.1. Appellant's purported appeal from the denial of his motion to suppress made pursuant to Penal Code section 1538.5 is dismissed. Review thereof is afforded upon appeal from the judgment of conviction. (Pen. Code, § 1538.5, subd. (m).)

He asserts two grounds for reversal: (1) That the officers' observations of the growing marijuana plants constituted an illegal search and their testimony and other evidence flowing from the search should have

been suppressed pursuant to his pretrial motion under Penal Code section 1538.5, and (2) the evidence was insufficient to support his conviction.

Appellant and several youthful companions rented and lived in a house in a rural area at 19685 Fowler, near Hilmar, Merced County, California. The 20-acre ranch upon which the house was located was known as the Fowler property.

In back of the house, in a corral and approximately 125 feet from the house, there were two watered and cared for marijuana plants. Between the house and the corral was a barn which was 18 to 20 feet high. One of the marijuana plants was approximately 10 to 20 feet to the rear of the barn and about 8 feet tall, and the other was about 40 to 50 feet from the barn and about 10 feet tall. On the other three sides of the corral there was a growing corn crop which stood some 10 to 12 feet high. While it appears the marijuana plants could have been viewed from the edge of the corn crop next to the corral, the corral area was well shielded from public view from any public way or vantage point.

The entire premises, including the house, the barn, the corral and the cornfield, were owned by a third party. The corn was being grown by Hilmer Nyman, a neighboring farmer, on the premises pursuant to a lease with the third party.

█ Aside from the above factual information, there is a total absence of evidence as to whether or not Mr. Nyman, the appellant and his friends or another were actual lessees of the corral area where the marijuana plants were growing. Since the searches of the corral area involved herein were without a warrant, the burden was upon the People to show that the search did not violate appellant's constitutional rights, including the burden of showing that appellant did not have the right to possess and use the corral area. It has failed to carry that burden. (*Horack* v. *Superior Court* (1970) 3 Cal.3d 720, 725 [91 Cal.Rptr. 569, 478 P.2d 1]; *People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) Inasmuch as appellant was utilizing the area, we presume he had the right to possess that area, at least by sufferance, and was clothed with whatever reasonable expectation of privacy from illegal searches a legal possessor of real property would normally have.

Moreover, wholly aside from appellant's legal right to possession of the corral area, he has the standing to challenge the legality of the

searches as to a third party—whether that may have been the owner, Mr. Nyman or another. (*People* v. *Martin* (1955) 45 Cal.2d 755, 759-761 [290 P.2d 855].)

## THE HELICOPTER OBSERVATIONS

The sheriff's office received a telephone tip that there was marijuana being grown somewhere on the 20-acre Fowler Street ranch. Upon driving to the premises, the officers readily determined that they could not see anything from the public roadway and that the only feasible method they could use to survey the entire 20-acre ranch was by air. The deputy sheriff arranged for a helicopter and caused it to be flown back and forth across the entire 20-acre ranch while he looked for marijuana plants. He finally spotted what he believed to be two marijuana plants growing in the corral. The helicopter hovered as low as 20 to 25 feet above the corral as the deputy made his observations.

Respondent contends that since the marijuana plants were growing in the corral in plain view of the neighbor, the neighbor's employees, crop dusting airplanes and mosquito abatement helicopters, appellant could not have entertained a reasonable expectation of privacy and that therefore the observation from the helicopter was not an illegal search. (*Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 309-311 [102 Cal.Rptr. 161, 497 P.2d 505]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129].) We first note that there was no evidence presented that any crop dusting planes or mosquito abatement helicopters had actually flown over the area nor that anyone had viewed the plants from the neighbor's cornfield.

■ The basic test as to whether there has been an unconstitutional invasion of privacy is whether the person has exhibited a subjective expectation of privacy which is objectively reasonable and, if so, whether that expectation has been violated by unreasonable governmental intrusion. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Berutko* (1969) 71 Cal.2d 84, 93-94 [77 Cal.Rptr. 217, 453 P.2d 721].)

This test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case. (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 308-312 [104 Cal.Rptr. 833, 502 P.2d 1305]; *People* v. *Berutko, supra,* 71 Cal.2d 84, 93; *Cohen* v. *Superior Court* (1970) 5 Cal.App.3d 429, 434-435 [85 Cal.Rptr. 354].)

A review of the numerous cases in this area of judicial confusion indicates that solutions in many instances have been sought and found in the application of certain rather fixed mechanical rules conveniently labeled; these include, among others, the so-called "open fields" doctrine, the "constitutionally protected area" doctrine, the doctrine of "looking through an open window," "common passageway" doctrine, and "minor trespass" doctrine. We do not believe, however, that since the advent of the "reasonableness" test set forth in *Edwards, Berutko* and *Bradley, supra,* and other cases, answers can be found in a Procrustean application of these doctrinaire pronouncements. (See *Katz* v. *United States* (1967) 389 U.S. 347, 350-352 [19 L.Ed.2d 576, 581, 582, 88 S.Ct. 507, 510-512].)

Certainly, it cannot be said that one who has a backyard concealed from the view of the public from the public roadway has shown in all events a reasonable expectation of privacy for that area, no matter what other facts and circumstances may exist. There are countless thousands of permutations of factual situations, each presenting its own problems. Any effort to generalize is fraught with danger. However, it is readily apparent a number of factors must be considered, among which are the location of the premises, that is, whether in an urban or isolated area, the existence or nonexistence and height of natural or artificial structures adjacent to the premises, the height and sight-proof character of the fencing, the location of public or common private walkways adjacent to the premises, the type and character of invasion by the governmental authority, and other unforeseeable factors which will undoubtedly arise on a case by case basis.

In the case at bench, if the observation of the marijuana plants had been made from the neighbor's property by an officer with the neighbor's consent, there would have been no search. (*Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 309-311 [102 Cal.Rptr. 161, 497 P.2d 505].) There would have been no search if the viewing had been made from a position where tradesmen, deliverymen and members of the public had a right to be. (*People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129].)

■ However, recent Supreme Court cases make clear that though a person may have consented to observations from some sources and by some persons and therefore cannot have a reasonable expectation of privacy as to those sources or persons, he does not thereby forego his Fourth Amendment protection as to intrusions from all sources and by all persons, and particularly has not waived his right to privacy as to government agents. In *People* v. *Triggs* (1973) 8 Cal.3d 884 [106 Cal.Rptr. 408, 506 P.2d

232], the court held that a person in an open-stalled public rest room has a reasonable expectation of privacy from clandestine observations by police from a concealed position, though he could have no such expectation of privacy from observations through the open door, whether made by members of the public or the police. In *People* v. *Krivda* (1971) 5 Cal.3d 357, at page 367 [96 Cal.Rptr. 62, 486 P.2d 1262], the court stated: ". . . we hold that defendants had a reasonable expectation that their trash would not be rummaged through and picked over by police officers acting without a search warrant.

"Of course, one must reasonably anticipate that under certain circumstances third persons may invade his privacy to some extent. It is certainly not unforeseen that trash collectors or even vagrants or children may rummage through one's trash barrels and remove some of its contents."

In *People* v. *McGrew* (1969) 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1] (overruled on other grounds in *People* v. *McKinnon,* 7 Cal.3d 899, 902, 907 [103 Cal.Rptr. 897, 500 P.2d 1097]), at page 412, the court said: "The hotel guest may reasonably expect a maid to enter his room to clean up, but absent unusual circumstances he should not be held to expect that a hotel clerk will lead the police on a search of his room." (Accord: *Krauss* v. *Superior Court* (1971) 5 Cal.3d 418, 422 [96 Cal.Rptr. 455, 487 P.2d 1023].)

In the case at bench, the officers were at the Fowler ranch for the purpose of exploring the premises for the marijuana plants. They had no other legitimate purpose for flying over the property. The marijuana plants were not discovered by happenstance as an incident to other lawful activity. (*Romero* v. *Superior Court* (1968) 266 Cal.App.2d 714 [72 Cal.Rptr. 430]; *People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 533 [65 Cal. Rptr. 798].) The helicopter activity was a seeking out, manifestly exploratory in nature. (*People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 831 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

It is settled that before the plain-view doctrine can be invoked the officer must have a right to be in the position from which he makes the plain-view observation. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992, 993]; *De Conti* v. *Superior Court* (1971) 18 Cal.App.3d 907, 909 [96 Cal.Rptr. 287].) The positioning of the helicopter 20 to 25 feet above appellant's backyard, in addition to being an obtrusive invasion of privacy, was probably illegal.[1] While

---

[1]Flying the helicopter at 20-25 feet over this area could very well have been a violation of state statutes and federal regulations. Public Utilities Code section 21012 provides: " 'Aircraft' means any contrivance used or designed for navigation of, or flight

appellant certainly had no reasonable expectation of privacy from his neighbor and his neighbor's permittees and none from airplanes and helicopters flying at legal and reasonable heights, we have concluded that he did have a reasonable expectation of privacy to be free from noisy police observation by helicopter from the air at 20 to 25 feet and that such an invasion was an unreasonable governmental intrusion into the serenity and privacy of his backyard.

Having concluded that the helicopter observation amounted to a search without a warrant and that it does not fall within the limited classes of searches for which a warrant is not required, the information acquired therefrom and all its fruits must be suppressed. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 484 [9 L.Ed.2d 441, 453, 83 S.Ct. 407, 415-416]; *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1105; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321].)

### THE GROUND OBSERVATIONS

After the helicopter flight, the deputy sheriff contacted Mr. Nyman to determine who owned the premises where he had located the growing marijuana plants. As we have indicated, the record is not clear whether or not Mr. Nyman was leasing the corral area. He merely said that he was farming "the place" and "the corn." The deputy testified he asked Mr.

in, the air." Section 21401 of the Public Utilities Code provides: "Sovereignty in the space above the land and waters of this state rests in the state, except where granted to and assumed by the United States pursuant to a constitutional grant from the people of the state. The operation of aircraft in such space is a privilege subject to the laws of this state." Section 21402 of the Public Utilities Code provides: "The ownership of the space above the land and waters of this State is vested in the several owners of the surface beneath, subject to the right of flight described in Section 21403. . . ."

Section 21403 of the Public Utilities Code provides in part: "(a) Flight in aircraft over the land and waters of this state is lawful, unless at altitudes below those prescribed by federal authority, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . ."

Civil Aeronautics Board regulations provide: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property or [*sic*] another." (14 C.F.R. § 91.9.)

"Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

"(a) *Anywhere.* An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.

". . . . . . . . . . . . . . .

"(c) *Over other than congested areas.* An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

"(d) *Helicopters.* Helicopters may be operated at less than the minimums prescribed in paragraph . . . (c) of this section if the operation is conducted without hazard to persons or property on the surface. . . ." (14 C.F.R. § 91.79.)

Nyman if "he had any objections to me driving in to look at it." The record does not reflect whether or not the question was answered. The record does not affirmatively show that Mr. Nyman gave permission to the deputy to go onto the premises and visit the corral area. Nevertheless, the deputy drove onto the premises, went to the corral, and closely examined the two marijuana plants from both outside and inside of the corral proper.

Shortly thereafter the deputy was joined by other officers and they all went to the house. Appellant answered their knock on the door. The deputies identified themselves as officers, and appellant told them he was the man of the house. The officers told appellant that they had reasonable grounds to believe that marijuana was being grown on the premises and that they were going to look in the barnyard. When asked if he would accompany the officers, appellant asked if he had to. One of the officers replied no, but that he would like him to do so. Appellant went along with the officers to the barnyard. The officers did not ask for nor receive permission from appellant to go to the barnyard, and the respondent herein makes no contention that this search was made with the consent of the appellant. When they arrived at the barnyard area, one of the deputies recognized the two marijuana plants and noted that they were freshly watered. The appellant was then placed under arrest and advised of his *Miranda* rights.

Appellant thereupon admitted that he had germinated the marijuana plants from seeds and planted them behind the barn.

Respondent contends that the ground search was with the consent of Mr. Nyman. As we have said, the record, which we have closely perused, contains no substantial evidence supporting consent. Neither the trial court nor this court can imply consent in view of the prosecution's burden to affirmatively demonstrate its existence. (*Horack* v. *Superior Court, supra,* 3 Cal.3d 720, 725; *People* v. *Johnson, supra,* 68 Cal.2d 629, 632; *Badillo* v. *Superior Court, supra,* 46 Cal.2d 269, 272.)

Assuming, however, that Mr. Nyman had the authority to and did expressly consent to the officers' going to the corral[2] those conversations took place after the alleged helicopter search. The record reveals, without contradiction, that prior to the helicopter observations the officers had no idea where the marijuana was located within the 20-acre Fowler ranch and, absent the helicopter search by which the plants were precisely located, would not have undertaken a search by foot of the ranch to find the plants. By reason of these facts the conclusion is inescapable that the entire activity

---

[2]As we have related, the prosecution did not show that Mr. Nyman had the corral area under lease. Therefore, in no event could he have had the authority to authorize the officers to go farther than the edge of the cornfield.

of the officers in consulting Mr. Nyman, in going to the corral area, and thereafter causing the appellant to accompany them there, where he made certain admissions, was caused by, intimately connected with, and would not have occurred absent the helicopter search. ■ As was said in *People* v. *Edwards, supra,* 71 Cal.2d 1096, at page 1105: "The exclusionary prohibition, of course, extends to the indirect as well as the direct products of an illegal search. (*Wong Sun* v. *United States,* 371 U.S. 471, 484 [9 L.Ed.2d 441, 453, 83 S.Ct. 407]; *Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385 [64 L.Ed. 319, 40 S.Ct. 182, 24 A.L.R. 1426].) The test for determining the reach of the 'fruits' doctrine is that set forth in *Wong Sun* v. *United States, supra,* at pages 487-488 [9 L.Ed.2d at p. 455, 83 S.Ct. 407], wherein the court stated, 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221. . . .' (See also *United States* v. *Wade,* 388 U.S. 218, 241 [18 L.Ed.2d 1149, 1165, 87 S.Ct. 1926]; *People* v. *Terry,* 70 Cal.2d 410, 427-428 [75 Cal. Rptr. 199, 450 P.2d 591]; *People* v. *Kanos, supra,* 70 Cal.2d 381, 385-386 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Bilderbach,* 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921]; Robert Pitner, *Fruit of the Poisonous Tree,* 56 Cal.L.Rev. 579, 580 et seq.)"

■ The burden was upon the prosecution to show that the evidence come at after the illegal helicopter search was not by reason of exploitation of that search and that there were attenuating facts which would purge the evidence of the primary taint of that illegal search. (*People* v. *Edwards, supra,* 71 Cal.2d 1096, 1106; *People* v. *Johnson* (1969) 70 Cal.2d 541, 547, 551, 552, 554 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366]; *People* v. *Faris* (1965) 63 Cal.2d 541, 546 [47 Cal.Rptr. 370, 407 P.2d 282].) Since the prosecution has failed to meet that burden, the marijuana plants and the observations of the officers from the air as well as from the ground and the admissions of the appellant at the scene should have been excluded as the fruits of that illegal search.

In the absence of the improperly admitted evidence, there was insufficient proof to sustain the conviction. The judgment must therefore be reversed.

Gargano, J., and Franson, J., concurred.

A petition for a rehearing was denied June 5, 1973, and respondent's petition for a hearing by the Supreme Court was denied August 16, 1973. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.