[Civ. No. 13988. Third Dist. Nov. 5, 1973.]

PETER STEPHEN DEAN, Petitioner, v.
THE SUPERIOR COURT OF NEVADA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Nason & Goldfarb, Brian M. Sax and Beilock & Sax for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, James T. McNally and Eddie T. Keller, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**FRIEDMAN, J.**—According to evidence before the Grand Jury of Nevada County, a letter from an anonymous informant tipped off the authorities to the possibility of commercial marijuana cultivation in an isolated area of the Sierra foothills, an activity hidden from view by the surrounding hills and woods. The county sheriff dispatched an airplane and a binocular-equipped deputy to the general area indicated by the informant. On its first "pass" the plane flew at an altitude of 700 feet. Among the trees the deputy saw a sizeable green patch near a dirt road. From a second pass, at an altitude of 400 to 500 feet, the deputy formed the belief that the patch was a field of growing marijuana. The plane dropped to an altitude of 300 feet and made a third pass. Using his binoculars, the officer was now able to discern the leaves' shape and their growth habit in clusters of five, typical of *cannabis sativa*. The cultivated area seemed to be about half the size of a football field. The surrounding trees had been topped to increase the plants' exposure to the beneficent rays of the sun. The marijuana plants had grown to heights of 15 to 20 feet.

A few days later sheriff's personnel in plain clothes conducted two foot expeditions in an attempt to locate the field by ground travel. They traversed a "well worn" footpath mentioned in the anonymous letter; they didn't know whether they were on public or private land; the area was not "posted" against trespassers and there were no fences; nearby was a home-made sign indicating the existence of a game refuge. The first expedition was fruitless. The next day, on their second expedition, the deputies reached a point where they could see the tops of plants which they believed to be the marijuana previously seen from the air. At that point petitioner came down the path. One officer "believed" that petitioner told them they were trespassing. They identified themselves as law officers and, in response to petitioner's question, acknowledged their lack of a search warrant. Nevertheless, the officers continued up the path, petitioner accompanying them

but manifesting no consent. They came to a tent and encountered two men, one of whom picked up a rifle. Petitioner shouted, "No, no, no," and the two men ran into the brush. After confirming the character of the agricultural produce, the officers arrested petitioner.

Petitioner held the land under an agreement of purchase. The marijuana occupied more than three-quarters' acre. The plants were arranged in neat rows along irrigation ditches, which could be watered from a nearby creek. The field contained approximately 400 plants with an estimated crop weight of 4,000 pounds and a commercial value exceeding $100,000. The evidence does not disclose whether the $100,000 figure is a wholesale or retail valuation. In the nearby tent the officers found weighing scales, a plastic bag containing 20 pounds of marijuana and a photographic copy of a printed study of marijuana inflorescence.

With this evidence before it, the grand jury indicted petitioner for possession of marijuana for the purpose of sale. (Health & Saf. Code, § 11359.) He seeks to quash the indictment on the ground that the evidence against him was acquired by search methods violative of the Fourth Amendment. Initially, he argues that aerial surveillance of his land was an invasion of constitutionally protected privacy.

The letter from an informant of unknown reliability did not supply probable cause for a search of private property; it furnished no more than a basis for further investigation. (*Mann* v. *Superior Court,* 3 Cal.3d 1, 6-7 [88 Cal.Rptr. 380, 472 P.2d 468].) ■ Fourth Amendment principles permit officers to make observations of suspicious activities on private property from a place where they have a right to be, for example, from a part of the suspect's premises open to the public or from the property of a cooperating neighbor; the same principles are violated by warrantless entry into the suspect's property as to which he has exhibited a "reasonable expectation of privacy." Recent expression of these principles appears in *People* v. *Dumas,* 9 Cal.3d 871, 881-883 [109 Cal.Rptr. 304, 512 P.2d 1208], and *Lorenzana* v. *Superior Court,* 9 Cal.3d 626, 631-634 [108 Cal. Rptr. 585, 511 P.2d 33]. Here the officers' aerial surveillance intruded on the airspace above defendant's land.

The Attorney General contends that a property holder has no Fourth Amendment right of privacy in the air corridor above his land. The contention was impliedly rejected in *People* v. *Sneed,* 32 Cal.App.3d 535 [108 Cal.Rptr. 146]. There the sheriff dispatched a helicopter to the defendant's 20-acre ranch; hovering 25 feet over the defendant's backyard, the heli-

copter occupants observed two marijuana plants growing in a corral 125 feet from the dwelling house. The court viewed the flight as an unconstitutional entry into an area covered by reasonable expectations of privacy.

In *Sneed* the court did not discuss the problem of private airspace raised by the Attorney General. As a matter of property law a landowner may claim exclusive possession of as much overlying airspace as he can occupy or use, immune from interference by low-flying aircraft. (*United States* v. *Causby,* 328 U.S. 256, 264-265 [90 L.Ed. 1206, 1211-1212, 66 S.Ct. 1062]; Annot. 25 A.L.R.2d 1454; see *Pacific Gas & E. Co.* v. *Peterson,* 270 Cal.App.2d 434, 437 [75 Cal.Rptr. 673].) Doctrines of property law do not necessarily parallel Fourth Amendment purposes. The latter are designed to assure personal privacy, not the sanctity of property. "[T]he Fourth Amendment protects people, not places." (*Katz* v. *United States,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].)

Expectations of privacy are not earthbound. The Fourth Amendment guards the privacy of human activity from aerial no less than terrestrial invasion. At a recent but relatively primitive time, an X-2 plane could spy on ground activities from a height of 50,000 feet. Today's sophisticated technology permits overflights by vehicles orbiting at an altitude of several hundred miles. Tomorrow's sophisticated technology will supply optic and photographic devices for minute observations from extended heights. Judicial implementations of the Fourth Amendment need constant accommodation to the ever-intensifying technology of surveillance. In analyzing claims of immunity from aerial surveillance by agents of government, the observer's altitude is a minor factor. Horizontal extensions of the occupant's terrestrial activity form a more realistic and reliable measure of privacy than the vertical dimension of altitude. At any rate, we expressly avow what the *Sneed* case implies: Reasonable expectations of privacy may ascend into the airspace and claim Fourth Amendment protection.

A generalized expression of Fourth Amendment doctrine usually excludes "open fields" from the scope of constitutional protection. (*Hester* v. *United States,* 265 U.S. 57, 58-59 [68 L.Ed. 898, 899-900, 44 S.Ct. 445]; *People* v. *Dumas, supra,* 9 Cal.3d at p. 882, fn. 10.) Consistently with *Katz* v. *United States, supra,* the courts recognize that a test phrased in terms of "constitutionally protected areas" often falls short; that a more fundamental test is whether the person has exhibited a reasonable expectation of privacy covering the area of the search or seizure. (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards,* 71 Cal.2d 1096, 1099-1104 [80 Cal.Rptr. 633, 458 P.2d 713].) The immediate question, then, is whether the marijuana field lay within the owner's reasonable expectations of privacy.

Had petitioner's crop been wheat or oats, the open fields rule would have supplied a sufficient answer, for agriculturists do not expect their wheat or oat fields' concealment from aerial view. Petitioner, on the other hand, claims that reasonable expectations of privacy blanketed his field of *cannabis sativa.* Was not the crop contraband? Did not its cultivation and possession expose the owner to prison? What more was needed to stimulate his strenuous insistence on privacy?

■ Petitioner erroneously gives identity to two unlike notions—an internal, uncommunicated need for privacy and a reasonable, exhibited expectation of privacy. Only the latter qualifies as a Fourth Amendment determinant. "The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute. . . . Certain other places carry with them an expectation of privacy which, although considerable, is less intense and insistent. , . . This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not." (*People* v. *Dumas, supra,* 9 Cal.3d at pp. 882-883.)

Judicial statements like the foregoing disclose that mankind's common habits in the use of domestic and business property supply a prime measure of the reasonableness of expectations of privacy. (See also, cases summarized in *Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at pp. 631-634, and *People* v. *Sneed, supra,* 32 Cal.App.3d at pp. 541-542.) One who builds a swimming pool and sun-bathing area in his backyard expects privacy (hence immunity) from aerial inspection. Areas reasonably used in ordinary business operations are assumedly entitled to similar immunity. Such areas are expectedly private according to the common habits of mankind. So was the area exposed to helicopter surveillance in *People* v. *Sneed, supra;* to the *Sneed* court, the area was the occupant's "backyard." (32 Cal.App. 3d at p. 542.)

When the police have a plain view of contraband from a portion of the premises as to which the occupant has exhibited no reasonable expectation of privacy, there is no search in a constitutional sense; the evidence so displayed is admissible. (*Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at p. 634; *People* v. *Dumas, supra,* 9 Cal.3d at p. 882, fn. 10.) One who establishes a three-quarter-acre tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight. The con-

traband character of his crop doubtless arouses an internal, uncommunicated need for secrecy; the need is not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas.[1] Aside from an uncommunicated need to hide his clandestine activity, the occupant exhibits no reasonable expectation of privacy consistent with the common habits of persons engaged in agriculture. The aerial overflights which revealed petitioner's open marijuana field did not violate Fourth Amendment restrictions.

Pointing to the lack of a search warrant, petitioner charges illegality of the officers' foot expeditions to the marijuana field. The reach of the Fourth Amendment no longer turns upon a physical intrusion into any given enclosure; hence, that a trespass was later revealed is not controlling. (*Katz v. United States, supra,* 389 U.S. at p. 353 [19 L.Ed.2d at p. 583]; *People v. Krivda,* 5 Cal.3d 357, 365 [96 Cal.Rptr. 62, 486 P.2d 1262].) After the aerial survey the officers still had inadequate means to establish the location with the particularity needed for a search warrant. (Pen. Code, § 1525; *People* v. *Coulon,* 273 Cal.App.2d 148, 152 [78 Cal.Rptr. 95].) Further investigation was necessary to establish the marijuana field's location. In the course of this investigation the deputies made two trips afoot, traversing unfenced, unposted woodland and following dirt paths. The land may have been public or private. On their first expedition the officers met two men on a branch path who told them they were "probably" on private property and asked them to leave. About a quarter mile distant from the well-worn path, they encountered a homemade game refuge sign containing a telephone number. These were the only evidences of private ownership in the property. Neither of these evidences occurred on the path which ultimately led the officers to the marijuana field. On that path there were no badges of private ownership or of exclusion of travelers. The officers

---

[1]We are somewhat troubled by judicial implications that expectations of privacy may be subjective (rather than objective). Thus several opinions of the California Supreme Court speak of an unprotected area as one in which the occupant has not exhibited "a subjective expectation of privacy." (*People* v. *Dumas, supra,* 9 Cal.3d at p. 882, fn. 10; *People* v. *Bradley, supra,* 1 Cal.3d at p. 85.) That kind of characterization is not altogether consistent with the concept of a "single standard of reasonableness." (*People* v. *Dumas, supra,* 9 Cal.3d at p. 883.) The latter concept seems to negative idiosyncrasies of the occupant which diverge widely from normal expectations. With all deference, we suggest that demands for an exhibited expectation of privacy and for a single standard of reasonableness evoke elements which are more objective than subjective. The question, after all, involves the legality of police conduct; that conduct can be appraised only in the light of that which has been *communicated.* The police can recognize no more than two elements: (a) the common habits of people in the use of their property and (b) the needs or expectations exhibited (i.e., communicated) by the particular occupant. This much seems true—that the need for an exhibited or communicated expectation of privacy forecloses uncommunicated demands peculiar to the occupant and not typical of common usage.

followed that path to a point where the tops of marijuana plants were visible. Upon viewing contraband from a place where expectations of privacy had not yet been exhibited, the officers had probable cause and hence authority for a warrantless entry and seizure. (*Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at pp. 631-634; *People* v. *Bradley, supra,* 1 Cal.3d at pp. 84-85; see also, *North* v. *Superior Court,* 8 Cal.3d 301, 307-308 [104 Cal. Rptr. 833, 502 P.2d 1305].) Petitioner's appearance and assertions of privacy did not divest the officers of that authority.

The petition is denied and the order to show cause discharged.

Richardson, P. J., and Pierce, J.,* concurred.

A petition for a rehearing was denied November 20, 1973, and petitioner's application for a hearing by the Supreme Court was denied January 3, 1973. Mosk, J., was of the opinion that the application should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.