[Civ. No. 43013. Second Dist., Div. Four. Mar. 11, 1974.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JERRY EUGENE STROUD et al., Real Parties in Interest.

**COUNSEL**

Joseph P. Busch, District Attorney, and Donald J. Kaplan, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, Harold E. Shabo, Gerald E. Peterson and Richard A. Curtis, Deputy Public Defenders, and Robert F. Johnson for Real Parties in Interest.

## OPINION

**FILES, P. J.**—This original proceeding was brought here to review an order of the superior court suppressing as evidence certain stolen automobile parts and the observations of police officers made from a helicopter and from a neighbor's yard. The superior court accepted the officers' testimony as true, but concluded that their conduct amounted to an unlawful search under the principles discussed in *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33], and *People* v. *Sneed* (1973) 32 Cal.App.3d 535 [108 Cal.Rptr. 146].

In the early afternoon of January 17, 1973, Los Angeles police officers Johnson and Miller received a report that a stolen automobile had been found in a parking lot in the Canoga Park area in the San Fernando Valley. While they were engaged in impounding that vehicle (a 1963 Chevrolet) they noticed on the street a 1956 Chevrolet which had been stripped of its doors, trunk lid, hood, fenders, grill work and seats. By telephone and radio, they learned that the 1956 Chevrolet had been reported stolen, and that its hood was red and the trunk lid white. The officers concluded that the vehicle could not have been driven far after it had been stripped. By radio, they called a police helicopter which was then patrolling about four miles away, and described the missing trunk lid and hood. The helicopter flew over the area at an altitude of about 500 feet and at a speed of about 30 miles per hour. In the backyard of a home on Loma Verde Street a few blocks from the location of the stripped vehicle Officer Royval, in the helicopter, saw what appeared to be the missing parts. A different 1956 Chevrolet parked in front first brought his attention to that residence. As the helicopter circled the yard on a radius of about 500 feet, Officer Royval looked down with his naked eye and through 20-power gyrostabilized binoculars. He recognized a white hood and a red trunk lid from a 1956 Chevrolet, among other automobile parts in the yard. At no time did the helicopter hover directly over the yard. The area observed was a part of the normal patrol area of this helicopter unit. Officer Royval radioed his observations to the investigating officers on the ground.

Officers Johnson and Miller then proceeded to the Loma Verde address. The rear yard, in which the auto parts had been seen from the air, was surrounded by a five-foot fence which could not be seen through. They walked across the front lawn of the adjacent residence to a point about 30 feet from the street, where they were able to see over the fence and observe the

auto body parts there.[1] Officer Miller is six feet tall. The auto body parts observed included a seat, a front end, a trunk lid, and a hood.

The officers then went to the door of the house where the auto parts were found and questioned the occupants. Defendant Stroud, who was asleep in the house when the officers arrived, stated that he and his wife had been away the previous day and he didn't know anything about the auto parts in the rear yard. After that the officers entered the backyard for a closer inspection of the auto parts.

We have concluded that upon this evidence, there can be no finding that defendants enjoyed a reasonable expectation of privacy for the storage of stolen auto body parts in this backyard. *Lorenzana* and *Sneed* are distinguishable on their facts.

■ Patrol by police helicopter has been a part of the protection afforded the citizens of the Los Angeles metropolitan area for some time. The observations made from the air in this case must be regarded as routine. An article as conspicuous and readily identifiable as an automobile hood in a residential yard hardly can be regarded as hidden from such a view. Our conclusion here is supported by the reasoning and decision in *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112 [110 Cal.Rptr. 585], upholding an aerial observation of a field of marijuana plants.

*People* v. *Sneed, supra,* 32 Cal.App.3d 535, involved two marijuana plants found growing in a corral on a ranch in a rural area of Merced County. Acting upon a tip that there was marijuana somewhere on that ranch, a deputy sheriff set out to survey the entire ranch in a helicopter, and finally found the contraband plants by hovering over the corral at a height of 20 to 25 feet. It does not appear that this area was the subject of a regular air patrol for the safety and protection of the inhabitants and their property. Indeed, the opinion points out that there was no evidence that any crop-dusting planes or mosquito-abatement helicopters had ever been over the area. It is not necessary to belabor the difference between the investigation conducted in *Sneed* and that shown by the evidence in the case at bench.

■ The observation made by the officers looking over the five-foot fence from the neighbor's yard disclosed no more than what was in plain view of the neighboring householders and anyone else who might be on their

---

[1]The witnesses were not asked whether there was any enclosure or obstruction in this front yard. Upon this record the trial court could reasonably infer it was an open area.

premises with or without an invitation. It is common knowledge that a front yard is likely to be crossed at any time by door-to-door solicitors, delivery men and others unknown to the owner of the premises. Although the officers may have been trespassers on the neighbor's front yard, this circumstance does not necessarily require suppression of the evidence. (See *People* v. *Terry* (1969) 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36].)

Although some objects and some activities behind the five-foot fence might be regarded as private, defendants could not reasonably have expected privacy there for their collection of large automobile parts. (*People* v. *King* (1970) 5 Cal.App.3d 724 [85 Cal.Rptr. 461].)

In *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], the Supreme Court upheld the seizure of marijuana plants which an officer found by his uninvited entry into a rear yard that was at least partially enclosed. The court said at page 85: "Although they were in a rear yard that was fenced to an undisclosed extent, they were located a scant 20 feet from defendant's door to which presumably delivery men and others came, and the front house, as well as defendant's house, apparently had access to the yard. Under the circumstances it does not appear that defendant exhibited a subjective expectation of privacy as to the plants. Furthermore, any such expectation would have been unreasonable."

In *Dillon* v. *Superior Court* (1972) 7 Cal.3d 305 [102 Cal.Rptr. 161, 497 P.2d 505], the court determined that marijuana growing in a backyard was lawfully observed and seized. An officer first saw the plants from the second floor bedroom of a neighbor, who had invited the officer to her premises. The fact that the officer was on the neighbor's premises by invitation was not the controlling circumstance. The opinion states at page 311: "The view of the backyard was vulnerable to observation by any of petitioner's neighbors, in essence, open to public view. The 3½- or 4-foot-high marijuana plants were in plain view, both to the neighbors and to the police officers. There was no violation of petitioner's 'reasonable expectation of privacy' as required by *Bradley* and *Edwards.*" (*People* v. *Bradley, supra,* 1 Cal.3d 80; *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].)

In *Lorenzana* v. *Superior Court, supra,* 9 Cal.3d 626, relied upon by the trial court, the policeman went to a closed window on the side of a home where there was no pathway or entrance, placed his face within an inch of the window and peered through a two-inch gap between the bottom of the window shade and the sill. No comparable invasion of a householder's privacy is involved in the case at bench.

Since it appears that the officers' lawful observation of the automobile parts on the defendant's premises supported a reasonable belief that the parts were stolen property, the officers were entitled to enter the backyard peaceably for the purpose of further inspection and seizure.

Counsel for defendant Walker asks us to say something about the motion to suppress Walker's statements to the officers. The record does not show what statement by Walker was involved in his motion, but it does appear that the trial court declined to rule on the "question . . . as to the statement allegedly made by Mr. Walker." The order of the trial court which is under review is an order under Penal Code section 1538.5 suppressing things obtained as a result of an allegedly illegal search and seizure. What has been said in this opinion deals only with the search and seizure issues and not with any other aspect of admissibility.

Let a peremptory writ of mandate issue commanding the respondent court to set aside its order of September 5, 1973, and make a new and different order denying the motion to suppress.

Jefferson, J., and Dunn, J., concurred.

A petition for a rehearing was denied March 27, 1974, and the petition of real party in interest Walker for a hearing by the Supreme Court was denied May 8, 1974.