96 Cal.App.3d 421 (1979)
158 Cal. Rptr. 86
RICHARD BENJAMIN BURKHOLDER, Petitioner,
v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
Docket No. 45879.
Court of Appeals of California, First District, Division One.
August 28, 1979.
*423 COUNSEL
Ludlow, Thompson, Fitzwater & Bolles and Rodger N. Bolles for Petitioner.
No appearance for Respondent.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and John H. Sugiyama, Deputy Attorneys General, for Real Party in Interest.
OPINION
RACANELLI, P.J.
This petition for writ of prohibition or mandamus arises against the following factual background as disclosed in the record.[1]
In early August 1978, Deputy Till, assigned to a special narcotics unit of the Santa Cruz County Sheriff's Department, was engaged in a daytime flight over a rural county area in an aircraft jointly owned by a private *424 flying club and the sheriff's office.[2] From an absolute altitude estimated at 1,500 to 2,000 feet, Deputy Till  aided by 7 by 50 mm. binoculars  observed what he believed to be a marijuana patch situated in a heavily wooded, mountainous area; Deputy Till had identified similar growths from aerial observations on three earlier, unrelated occasions. Using a camera equipped with 135 mm. telephoto lens, photographs taken by Deputy Till depicted a clearing surrounded by chicken wire enclosing bright, green plant life readily distinguishable from the surrounding foliage. The patch was situated on the south side of a steep canyon enclosed by trees.
On September 10, 1978,[3] Deputy Till made a second overflight and again observed the suspected marijuana patch. Two days later, accompanied by fellow officers and two newspaper reporters, Deputy Till "proceeded to the location" of the patch on the property leased by petitioner without any previous attempt or necessity to ascertain either the geographical location, description or ownership of the real property. Ignoring posted "no trespassing" signs, Deputy Till used a master key to unlock a gate across the dirt access road leading to the property; encountering a second padlocked gate about three-fourths of a mile farther on, the party simply skirted the unfenced gate and entered upon petitioner's property without permission. While petitioner stood silently next to a pickup truck and travel trailer on the other side of the gate, Deputy Till continued up the road to the wire-enclosed clearing in conducting a warrantless search resulting in the discovery of over 200 growing marijuana plants ranging to a height of approximately 10 feet.
Following petitioner's arrest, the uprooted contraband was seized by the officers and later analyzed as marijuana.[4]

Contentions
Petitioner's Fourth Amendment claim is two pronged: the optically aided surveillance by aerial overflight and the subsequent nonconsensual entry and warrantless search constituted impermissible intrusions into *425 constitutionally protected areas. Resisting that claim, respondent argues that no right of privacy attaches to objects in plain view, whether observed by the naked eye or artificial devices; further, that commission of a technical trespass does not vitiate an otherwise reasonable investigatory search conducted without a warrant.

I. Scope of Review

(1) Preliminarily, we recognize that in reviewing a challenged warrantless search, we must defer to the findings of the trier of fact where supported by substantial evidence. (People v. Superior Court (Keithley) (1975) 13 Cal.3d 406, 410 [118 Cal. Rptr. 617, 530 P.2d 585].) However, where  as here  the evidence is uncontradicted and no contrary inferences may be reasonably drawn, such findings are not binding and we are obliged to review the undisputed record as a matter of law. (Badillo v. Superior Court (1956) 46 Cal.2d 269, 271 [294 P.2d 23]; People v. Superior Court (1970) 3 Cal. App.3d 476, 488 [83 Cal. Rptr. 771].)

II. The Overflights

(2) The basic test to be applied in determining the nature of the right of privacy protected under the warrant clauses of the federal and state Constitutions has been consistently stated as whether the person has exhibited a subjective expectation of privacy which is objectively reasonable and, if so, whether that expectation has been violated by unreasonable governmental intrusion. (People v. Bradley (1969) 1 Cal.3d 80, 84-86 [81 Cal. Rptr. 457, 460 P.2d 129]; People v. Edwards (1969) 71 Cal.2d 1096, 1100 [80 Cal. Rptr. 633, 458 P.2d 713]; People v. Berutko (1969) 71 Cal.2d 84, 93-94 [77 Cal. Rptr. 217, 453 P.2d 721]; People v. Sneed (1973) 32 Cal. App.3d 535, 541 [108 Cal. Rptr. 146].) However, while privacy expectations are not "earthbound" and "may ascend into the airspace and claim Fourth Amendment protection" (Dean v. Superior Court (1973) 35 Cal. App.3d 112, 116 [110 Cal. Rptr. 585]; see also People v. Sneed, supra, at p. 541), a possessor of land devoted to the cultivation of contraband can exhibit no reasonable expectation of privacy from an overflight consistent with the common habits of persons engaged in agrarian pursuits. (See Dean v. Superior Court, supra, at p. 118.) When such contraband is plainly visible from a vantage point where law officers had a right to be (People v. Bradley, supra, 1 Cal.3d 80), there can be no reasonable expectation of privacy and no search in the constitutional sense. (See Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]; cf. People v. Superior Court (Stroud) (1974) *426 37 Cal. App.3d 836 [112 Cal. Rptr. 764] [helicopter surveillance of open yard from height of 25 feet revealing distinctively colored stolen automobile parts].)
Unlike the factual circumstances disclosed in Sneed, upon which petitioner heavily relies, neither of the flights herein involved a purposeful and intensive (helicopter) overflight at an unreasonable and unlawful altitude (20 feet) during a random search for contraband. It cannot be reasonably argued that the unobtrusive observations by Deputy Till of the area below from an otherwise lawful altitude parallels the type of unreasonable governmental intrusion condemned in Sneed. On the contrary, similar to the factual circumstances reflected in Dean (3 overflights from a minimum altitude of 300 feet disclosing a marijuana field half the size of a football field), it clearly appears that "the aerial overflights which revealed petitioner's open marijuana field did not violate Fourth Amendment restrictions." (Dean v. Superior Court, supra, 35 Cal. App.3d 112, 118.)
(3) Nor does the fact that Till's observations were optically aided compel a contrary conclusion. The evidence revealed that the patch was visible to the naked eye and  under the circumstances  reasonably supported an inference that it was cultivated marijuana. Till testified that his use of the binoculars simply aided his visual observations by providing greater detail. In such cases, the determinative factor is whether a reasonable expectation of privacy existed entitling the claimant to be free from clandestine surveillance, whether by natural or artificial means. (See People v. Arno (1979) 90 Cal. App.3d 505, 512 [153 Cal. Rptr. 624]; Dean v. Superior Court, supra, 35 Cal. App.3d 112, 116.) As succintly stated by the Arno court (at p. 509): "... if the purpose of the optically aided view is to permit clandestine police surveillance of that which could be seen from a more obvious vantage point without the optical aid, there is no unconstitutional intrusion; and ... if the purpose of the optical aid is to view that which could not be seen without it, there is."[5]
We conclude that both the aided and unaided observations, achieved during unobtrusive overflights, violated no privacy rights of petitioner since none  under the circumstances shown  could reasonably exist.

*427 III. The Ground Search

(4) The more critical inquiry herein concerns the validity of the warrantless search conducted by the Till foot party involving the nonconsensual entry upon private property. Under applicable Fourth Amendment principles, we believe the record unmistakably demonstrates that petitioner possessed a protectable right of privacy impermissibly transgressed by the police incursion requiring suppression of the contraband so seized. We discuss the controlling principles and explain our reasons.
It is now well established that in defining the nature of the protectable interest, it is "`the security of one's privacy against arbitrary intrusion by the police' [that] is `at the core of the Fourth Amendment.'" (People v. Edwards, supra, 71 Cal.2d 1096, 1103, quoting Berger v. New York (1967) 388 U.S. 41, 53 [18 L.Ed.2d 1040, 1049, 87 S.Ct. 1873].) As the Edwards court underscores, the constitutional protection is accorded to people and not places, and if the person's expectation of privacy is reasonable such person is entitled to be free from unreasonable governmental intrusion. (Id.; see also Terry v. Ohio (1968) 392 U.S. 1, 9 [20 L.Ed.2d 889, 898, 88 S.Ct. 1868]; Katz v. United States (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 581, 88 S.Ct. 507].) The absolute limitation placed upon Fourth Amendment protection under the "open fields" doctrine of another era (see Hester v. United States (1924) 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445]) is no longer viable. As earlier noted, the modern standard has been stated by our highest state court in the following manner: "[A] number of cases involving claims of unconstitutional searches or seizures in open fields ... have stated their conclusions in terms of whether the place was a `constitutionally protected area.' That phrase, however, does not serve as a solution in all cases involving such claims, and we believe that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (People v. Edwards, supra, 71 Cal.2d 1096, 1100; see also Dean v. Superior Court, supra, 35 Cal. App.3d 112; People v. Little (1973) 33 Cal. App.3d 552 [109 Cal. Rptr. 196]; People v. Sneed, supra, 32 Cal. App.3d 535, 540.) Of course, that announced standard governs our inquiry herein. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].)
But the test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case (North v. Superior *428 Court (1972) 8 Cal.3d 301, 308-312 [104 Cal. Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; Phelan v. Superior Court (1979) 90 Cal. App.3d 1005, 1011 [153 Cal. Rptr. 738]; People v. Sneed, supra, 32 Cal. App.3d 535, 540) and does not turn merely upon whether a physical trespass is manifested (see Dean v. Superior Court, supra, 35 Cal. App.3d 112, 118; see also People v. Fly (1973) 34 Cal. App.3d 665 [110 Cal. Rptr. 158]). Given the existence of a reasonable expectation of privacy "any governmental intrusion into that privacy is an `unreasonable search' within the meaning of the Fourth Amendment, whether that intrusion be the traditional physical search [citation] or ... auditory invasion [citations] or ... visual intrusion [citations]." (Lorenzana v. Superior Court, supra, 9 Cal.3d 626, 639.) Moreover, the warrantless invasion of such privacy right is per se unreasonable unless falling within one of the recognized exceptions to the warrant requirement (Katz v. United States, supra, 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; Lorenzana v. Superior Court, supra, at p. 634; People v. Edwards, supra, 71 Cal.2d 1096, 1105). The burden of so justifying the warrantless intrusion rests upon the People. (Vale v. Louisiana (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969]; People v. Minjares (1979) 24 Cal.3d 410, 416 [153 Cal. Rptr. 224, 591 P.2d 514]; People v. Rios (1976) 16 Cal.3d 351, 355-356 [128 Cal. Rptr. 5, 546 P.2d 293].)
Herein, petitioner clearly entertained a subjective expectation of privacy in cultivating the marijuana patch on the property leased by him and under physical circumstances precluding visual detection from abutting property. Entry to the property was openly restricted by posted signs along, and locked gates across, the rural access road signifying an intention to deny access to the public in general, including government agents. (Cf. People v. Krivda (1971) 5 Cal.3d 357, 367 [96 Cal. Rptr. 62, 486 P.2d 1262] [overruled on other grounds, People v. Kaanehe (1977) 19 Cal.3d 1, 11, fn. 6 (136 Cal. Rptr. 409, 559 P.2d 1028), and Madril v. Superior Court (1975) 15 Cal.3d 73, 77 (123 Cal. Rptr. 465, 539 P.2d 33)]; People v. Sneed, supra, 32 Cal. App.3d 535, 542.) The patch itself, located upon the side of a hilly area surrounded by trees, was totally concealed from view at ground level. The existence of the travel trailer supports an inference that petitioner at least occasionally resided upon the leased property. Unlike the factual circumstances disclosed in the cases upon which the People rely (People v. Superior Court (Stroud), supra, 37 Cal. App.3d 836 [contraband in plain view from adjoining property]; Dean v. Superior Court, supra, 35 Cal. App.3d 112 [public view of marijuana growth from a vantage point on a "well-worn" foot path apparently open to public use]; People v. Little, supra, 33 Cal. App.3d 552 [property contiguous to highway and public facilities in a suspected crime *429 area]), the marijuana patch was not in plain view and became observable only through a flagrant disregard of well-recognized "indicia" or "badges of private ownership" intended to exclude the general public. Nor were any unrestricted common areas or adjoining trails shown to exist inviting access to any part of the subject property. (Cf. Phelan v. Superior Court, supra, 90 Cal. App.3d 1005, 1011-1012.)
Under the totality of facts and circumstances shown, petitioner's subjective expectation of privacy was objectively reasonable, no sound basis being apparent to reasonably foresee or anticipate that uninvited government agents would enter to perform a warrantless exploratory search.[6] (See Phelan v. Superior Court, supra, 90 Cal. App.3d 1005, and cases discussed at pp. 1012-1013.) Short of erecting an impenetrable enclosure, we can conceive of no other feasible measures the rural dweller might reasonably undertake to assert and preserve his individual right of privacy. We agree with the Phelan court that no perceptible difference exists "between [wholly] fenced land on the one hand and open land having a particular enclosed area on the other hand, insofar as the Fourth Amendment is concerned." (Id., at pp. 1016-1017.) To contemplate a contrary conclusion would itself lend credence to a specter of citadel-like fortifications in order to safeguard an otherwise objectively reasonable expectation of privacy of the contemporary rural dweller, a refuge neither required by nor compatible with established constitutional principles.
In light of the totality of the circumstances herein, we conclude that the challenged warrantless entry and search constituted an unreasonable invasion of petitioner's reasonable expectation of privacy justified by neither exigent nor emergency circumstances. (Mincey v. Arizona (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298, 98 S.Ct. 2408]; Katz v. United States, supra, 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; People v. Minjares, supra, 24 Cal.3d 410, 416; Cleaver v. Superior Court (1979) 24 Cal.3d 297, *430 302 [155 Cal. Rptr. 559, 594 P.2d 984]; People v. Cook, supra, 22 Cal.3d 67, 97-98, and cases cited therein.) Consequently, the results of such unlawful search are irretrievably tainted and must be suppressed.
A writ of mandamus shall issue directing respondent court to grant petitioner's motion to suppress the challenged evidence.
Elkington, J., and Newsom, J., concurred.
NOTES
[1] Petitioner's dual motion to set aside the information (Pen. Code, § 955) and to suppress evidence (Pen. Code, § 1538.5) was submitted on the basis of the preliminary hearing transcript and certain photographic exhibits. Both the parties and the trial court treated the suppression claim as dispositive on the merits of said motion; accordingly, we limit our discussion to a review of that claim.
[2] Although the flight was apparently recreational, Deputy Till testified he was compensated by the special unit for that particular aerial flight.
[3] The record is silent as to what official course of action Deputy Till took in the interim, if any, following his initial discovery.
[4] The bulk of the marijuana plants were ultimately destroyed pursuant to process, a sample being retained for evidentiary purposes.
[5] We likewise reserve judgment on the question whether optically aided privacy intrusions may nevertheless be justified under circumstances involving substantial risk to life or property. (See People v. Arno, supra, at p. 513.)
[6] We are at a loss to understand why, in light of Deputy Till's observations and patently reasonable suspicions, no effort was undertaken to seek a search warrant. Possessed of a reasonable belief of criminal activity afoot and sufficient information to lead him and his party (nearly one month later) directly to petitioner's access road, no further exploratory investigation seemed necessary in order to establish the location with sufficient particularity; nor were efforts of any kind generated to determine the identity of the person occupying the premises to be searched. (See Pen. Code, § 1525; cf. People v. Coulon (1969) 273 Cal. App.2d 148 [78 Cal. Rptr. 95].) In view of such uncontroverted testimony, it is unreasonable to surmise that an underlying affidavit could not have attested with substantial probability that there was "specific property lawfully subject to seizure ... [then] located in the particular place for which the warrant is sought." (People v. Cook (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal. Rptr. 605, 583 P.2d 130].)