[No. A031204. First Dist., Div. Three. Sept. 8, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHEL ETIENNE VENGHIATTIS, Defendant and Appellant.

**COUNSEL**

Elizabeth Sapanai for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—By complaint filed September 29, 1983, Michel Etienne Venghiattis (Venghiattis), was charged with the cultivation of marijuana in violation of Health and Safety Code section 11358. Venghiattis entered a plea of not guilty. At the preliminary examination which followed, his Penal Code section 1538.5[1] motion was denied and he was held to answer.

An information was filed in the superior court alleging the violation of Health and Safety Code section 11358. The case was referred to the probation department for a diversion report.[2] A hearing was held and diversion was denied after the trial court found that the marijuana was not cultivated for personal use.

Venghiattis filed a motion to dismiss pursuant to section 995 and a motion to suppress evidence pursuant to section 1538.5. The motions challenged the legality of the warrantless aerial surveillance of his property. Both motions were submitted on the basis of the preliminary hearing transcript as well as points and authorities submitted by the parties and the stipulated testimony of a deputy sheriff. The trial court denied the motions stating that Venghiattis did not exhibit a reasonable expectation of privacy from overflight. Venghiattis's petition for writ of mandamus and prohibition, challenging the denial of the motions, was denied by the Court of Appeal without opinion. After his petition for hearing in the Supreme Court was denied, Venghiattis entered a plea of guilty. He appeals from the judgment of conviction, contending that the aerial observations of his property leading to the issuance of a search warrant violated his right of privacy protected by the Fourth Amendment of the United States Constitution, and that the denial of diversion was an abuse of discretion.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]Penal Code section 1000 provides that the chapter concerning diversion shall apply for violation of Health and Safety Code section 11358 "if the marijuana planted, cultivated, harvested, dried or processed is for personal use. . . ." Section 1000.2 states in part: "The court shall hold a hearing and, after consideration of the probation department's report and any other information considered by the court to be relevant to its decision, shall determine if the defendant consents to further proceedings under this chapter and waives his right to a speedy trial and if the defendant should be diverted and referred for education, treatment or rehabilitation. If the court does not deem the defendant a person who would be benefited by diversion, or if the defendant does not consent to participate, the proceedings shall continue as in any other case."

## I

During the months of August and September 1983, the Marin County Sheriff's Office conducted a program of aerial observation and detection of marijuana. On August 5, 1983, between 11:50 a.m. and 1:40 p.m., Deputy Richard Todt was being flown over western Marin County. During the course of one of these overflights, he identified marijuana growing on Venghiattis's property. The aircraft flew over the property at an altitude of not less than 1,000 feet. Deputy Todt, who is trained in the aerial identification of marijuana, was not using any visual aids when he first observed the marijuana. Todt flew over the property a second time on September 16, 1983, between approximately 2 p.m. and 4 p.m. Photographs of the marijuana were taken by a Lieutenant Riddell during the overflights. Lieutenant Riddell is also trained in the aerial identification of marijuana. Prior to the overflight, the sheriff's office had not received any information concerning marijuana growing on Venghiattis's property.

The information obtained from the aerial observations was the basis of the search warrant procured by Deputy Todt on September 16, 1983. On September 22, 1983, the officers executed the search warrant and found 18 cultivated marijuana plants ranging in height from 6 to 11 feet.

The Venghiattis property is an unfenced one-acre parcel of land on a brushy, wooded hillside in Inverness. The property is bordered on one side by a 16-acre lot and on the other side by a 25-acre lot.

The marijuana garden is located approximately 100 feet from the Venghiattis residence. The garden is surrounded by a wire mesh fence and six-foot-high brush. In order to gain access to the marijuana garden one would have to follow a path from the residence through the trees and brush. Although the areas immediately surrounding the residence, the driveway and the parking lot, had been cleared, the marijuana garden was in an uncleared, heavily wooded, brushy area of the property. It was not visible from the street or from the residence. However, there was no gate preventing an individual from walking on the path. Nor was there anything hiding the path from the view of someone who walked up to the residence.

## II

We first consider Venghiattis's constitutional challenge to the aerial observation of his property as a violation of the Fourth Amendment of the United States Constitution.[3] Because we hold that Venghiattis had no rea-

---

[3]This court's prior denial of the petition for writ of mandamus is not res judicata on the question of the legality of the search. (*People* v. *Medina* (1972) 6 Cal.3d 484, 491, fn. 6 [99 Cal.Rptr. 630, 492 P.2d 686].)

sonable expectation of privacy in his marijuana garden, we affirm the trial court's denial of the section 1538.5 and section 995 motions.

In *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], it was established that "the Fourth Amendment protects people, not places." (*Id.*, at p. 351 [19 L.Ed.2d at p. 582].) ■ Courts must analyze whether an individual has manifested a subjective expectation of privacy as well as whether "the expectation [is] one that society is prepared to recognize as 'reasonable.'" (*Id.*, at p. 361 [19 L.Ed.2d at p. 588].) Only if both prongs of this test are met will it be determined that an individual's Fourth Amendment rights have been violated. (*Ibid.*; accord *People* v. *Bradley* (1969) 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].)

Although location is no longer the touchstone of Fourth Amendment analysis, it remains significant under the *Katz* test. While expectations in connection with some places may be reasonable, expectations in connection with other places may be unreasonable. (*Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112, 117 [110 Cal.Rptr. 585].) "'This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not.'" (*Ibid.*, citing *People* v. *Dumas* (1973) 9 Cal.3d 871, 882-883 [109 Cal.Rptr. 304, 512 P.2d 1208].)

Recently, the United States Supreme Court in *California* v. *Ciraolo* (1986) 476 U.S. 207 [90 L.Ed.2d 210, 106 S.Ct. 1809], held that the Fourth Amendment was not violated by naked eye aerial surveillance of an individual's backyard, even when the property in question may be considered part of the curtilage. The court found that the defendant's expectation of privacy from police aerial observation of his garden was unreasonable and "not an expectation that society is prepared to honor." (*Id.*, at p. — [90 L.Ed.2d at p. 217].)

Pursuant to the receipt of an anonymous tip that marijuana was growing in the defendant's backyard, the Santa Clara police investigated this information but were unable to observe the contents of the backyard from ground level because the defendant had two fences surrounding his backyard, a six-foot outer fence and a ten-foot inner fence. Police officers, trained in marijuana identification, then hired a private plane, flew over the house at an altitude of 1,000 feet, observed growing marijuana plants and photo-

graphed them. A search warrant was obtained on the basis of an affidavit describing the anonymous tip and the aerial observations. (*California* v. *Ciraolo, supra,* 476 U.S. at p. — [90 L.Ed.2d at p. 214].)

The court found that the defendant did not come within the second prong of the test set forth in *Katz* v. *United States, supra,* 389 U.S. 347, 360 [19 L.Ed.2d 576, 587], as his "expectation that his garden was protected from such [aerial] observation is unreasonable . . . ." (*California* v. *Ciraolo, supra,* 476 U.S. at p. — [90 L.Ed.2d at p. 217].) Citing facts that the observation took place while the officers were in "navigable airspace," that the observations were done in a "physically nonintrusive manner" and that anyone flying in that airspace could have seen the marijuana plants, the court concluded that the defendant did not have a constitutionally protected reasonable expectation of privacy. (*Ibid.*) The court stated that the fact that the area in question was within the curtilage does not bar all police observations. "[T]he mere fact that an individual has taken measures to restrict some views of his activities [does not] preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." (*Id.* at p. — [90 L.Ed.2d at p. 216], citing *United States* v. *Knotts* (1983) 460 U.S. 276, 282 [75 L.Ed.2d 55, 62-63].)

Venghiattis's contention that the Fourth Amendment protects him against aerial observation of the area in question has been clearly answered in *California* v. *Ciraolo*. Even if the area in which the marijuana was growing could be characterized as part of the curtilage, Venghiattis may not successfully assert a reasonable expectation of privacy from lawful aerial observations. His efforts at hiding the garden from passers-by do not serve to protect him from overflights. The police officers' aerial surveillance did not violate Venghiattis's Fourth Amendment rights.

California courts have upheld the aerial surveillance of relatively unpopulated lands from lawful altitudes. (*People* v. *Egan* (1983) 141 Cal.App.3d 798, 806 [190 Cal.Rptr. 546]; *People* v. *Joubert* (1981) 118 Cal.App.3d 637, 642 [173 Cal.Rptr. 428]; *People* v. *St. Amour* (1980) 104 Cal.App.3d 886, 891 [163 Cal.Rptr. 187]; *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421, 425-426 [158 Cal.Rptr. 86]; *Dean* v. *Superior Court, supra,* 35 Cal.App.3d at p. 118.) On the other hand, our Supreme Court recently ruled that a warrantless aerial surveillance which led to the acquisition of a search warrant under which marijuana growing in an individual's backyard was seized violated the proscription against unreasonable seizures and searches contained within article I, section 13 of the California

Constitution.[4] (*People* v. *Cook* (1985) 41 Cal.3d 373, 375-376, 382, fn. 4 [221 Cal.Rptr. 499, 710 P.2d 299].)

■ However, the *Cook* decision is not controlling of our case at bench for two reasons. First, unlike the instant case, the area in which a reasonable expectation of privacy was being asserted in *Cook* was an "enclosed back yard whose outer boundary was within yards of [the] dwelling . . ." and, thus, found to be part of the defendant's curtilage. (*People* v. *Cook, supra,* 41 Cal.3d at p. 377.) In the instant case, the area in which Venghiattis asserts a reasonable expectation of privacy is 100 feet from the dwelling in an unfenced backyard. Further, the area in which the marijuana garden was located could not have been considered annexed to the house in view of the fact that the land surrounding the garden was a brushy wooded hillside. In contrast, the areas immediately surrounding the house, the driveway and parking lot, had been cleared. The garden was further separated from the house by the six-foot-high brush and wire mesh fence surrounding it. There was no fence enclosing the entire Venghiattis property or any portion thereof, except the marijuana garden. Thus, the garden was not included in any general enclosure surrounding the dwelling. The mere fact that a resident calls a nearby enclosure "my garden" does not necessarily make it part of the curtilage when it is significantly separated by space and barrier from the home. Also, the sole activity conducted within the enclosure, the cultivation of marijuana, was not an intimate activity associated with the sanctity of one's home and the privacies of life. The garden was in an undeveloped area of the property outside of the curtilage, i.e., in open fields.

■ Second, the California Constitution, article I, section 13, is not a ground for the exclusion of the evidence as the relevant events took place after the adoption of article I, section 28, subdivision (d), of the California Constitution, known as Proposition 8. In *In re Lance W.* (1985) 37 Cal.3d 873, 887-890 [210 Cal.Rptr. 631, 694 P.2d 744], our Supreme Court held that Proposition 8 abrogated independent state grounds as a basis for the exclusion of illegally obtained evidence. The court ruled that Proposition 8 was intended to permit exclusion of relevant, but unlawfully obtained evidence, only if exclusion is required by the United States Constitution. The exclusion of the evidence in this case is not mandated by the Fourth Amendment to the United States Constitution.

## III

Venghiattis also argues that the trial court's denial of his motion for diversion constitutes an abuse of discretion. Section 1000 provides that

---

[4]Article I, section 13, provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

diversion may be available for a defendant charged with a violation of Health and Safety Code section 11358 if the marijuana being cultivated is for "personal use." The probation officer's report recommended diversion. At the diversion hearing, the trial court heard the conflicting testimony of the two expert witnesses concerning the amount of dried usable marijuana Venghiattis's plants would produce. The expert called by the People gave extensive testimony in respect to the size of the marijuana plants and the amount of marijuana that could be produced from the plants and the other factors that are considered in determining whether marijuana is being cultivated for personal use. Venghiattis maintains that the trial court erroneously rejected testimony of his expert and the recommendation of the probation department and arrived at the conclusion that the marijuana was not for personal use by relying on her own subjective opinion. This contention is not supported by the record.

■ We find no error in the trial court's denial of diversion. Whether the marijuana is for "personal use," within the meaning of the statute, is a determination to be made by the trial court. (*People* v. *Williamson* (1982) 137 Cal.App.3d 419, 423 [187 Cal.Rptr. 107].) The trial court evaluated the testimony and the probation officer's diversion report and its decision to give more weight to the testimony of the People's expert than to that of the defendant's expert does not constitute an abuse of discretion.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied October 1, 1986, and appellant's petition for review by the Supreme Court was denied November 26, 1986.