[No. C016959. Third Dist. May 31, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
KELLY JEAN BRACKETT, Defendant and Appellant.

COUNSEL

Leonard K. Tauman, Public Defender, and Barry A. Zimmerman, Assistant Public Defender, for Defendant and Appellant.

Paul Richardson, District Attorney, and Leslie A. Monahan, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**SPARKS, J.**—After being found ineligible for pretrial drug diversion, defendant Kelly Jean Brackett was convicted in the Placer County Municipal Court of the misdemeanor offenses of being under the influence of a controlled substance (Health & Saf. Code, § 11550) and trespassing (Pen. Code, § 602, subd. (j) [all subsequent statutory references are to the Penal Code unless otherwise indicated]). She appealed to the Appellate Department of the Placer County Superior Court, contending that the district attorney abused his discretion in determining she was ineligible for diversion and that she was improperly denied pretrial review of the district attorney's determination of her ineligibility. The appellate department agreed with her last contention and remanded the case to the municipal court for the purpose of conducting a hearing to determine whether the district attorney's finding of ineligibility was supported by substantial evidence. The appellate department then certified the transfer of this case to our court for the purpose of resolving the following question: "Where a defendant makes application for drug diversion under Penal Code Section 1000 et. seq., is that defendant entitled to a pre-trial hearing to test the sufficiency of the evidence underlying the determination of ineligibility and to provide a record for review on appeal?" We conclude that under the principles enunciated in *Sledge* v. *Superior Court* (1974) 11 Cal.3d 70 [113 Cal.Rptr. 28, 520 P.2d 412], the defendant is not entitled to a such a pretrial hearing. Instead, her only remedy is to challenge the district attorney's finding of ineligibility in a postconviction appeal. Accordingly, we shall reverse the judgment of the appellate department.

FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 1992, defendant was stopped by a Placer County deputy sheriff as she attempted to flee in a truck from the scene of a trespass and petty theft. Defendant exhibited signs of being under the influence of a stimulant: "She had dilated pupils. She was sweating profusely. She was fidgety, she had body tremors, and she had a dry mouth." The deputy placed

her under arrest for being under the influence of drugs. A search of the cab of her truck revealed a baggie containing various pills and capsules and another baggie with methamphetamine residue, a straw, mirrors, and a "pay-owe" sheet in defendant's wallet. A locked box in the bed of the truck contained a white powdery substance and scales.

Defendant was charged in the Placer County Municipal Court with three misdemeanors: being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), trespassing (§ 602, subd. (j)), and resisting a peace officer (§ 148.) Before trial, defendant requested diversion at pretrial conferences but the district attorney found she was ineligible for diversion under subdivision (a)(3) of section 1000 because the evidence found in the truck indicated a nondivertible offense was involved, namely possession of a controlled substance for sale in violation of Health and Safety Code section 11378.

Defendant waived her right to a jury trial. During the course of a bench trial in the municipal court, defendant requested the court to entertain a hearing on the district attorney's finding of ineligibility but the court refused on the ground that the case was before it for trial. At the conclusion of the trial the court found defendant guilty of being under the influence of methamphetamine but acquitted her on the charge of resisting a peace officer. Defendant then pled guilty to the trespass charge. The court placed defendant on three years' probation, with ninety days to be served in jail.

Defendant appealed to the appellate department of the superior court. Among the issues addressed by the appellate department was whether defendant was entitled to a pretrial hearing in which to challenge the district attorney's finding of ineligibility for diversion. The appellate department was particularly concerned because, as it noted, evidence relating to possession for sale was irrelevant to the charged offense of being under the influence of methamphetamine, and thus defendant did not have an opportunity at trial to present evidence challenging the district attorney's determination that she, rather than a codefendant, had possessed drugs for sale. After reviewing relevant case law, the appellate department concluded this dilemma was best resolved by permitting defendant "to challenge the [d]istrict [a]ttorney's determination of ineligibility for diversion at the trial court level by moving the court to examine the evidence in support of that determination. At a hearing on the motion, the defendant must be permitted to challenge the evidence of ineligibility, and must be able to produce evidence to controvert that finding." In reaching this conclusion the appellate department chose to follow what it believed to be "the [*People* v.] *Williamson* [(1982) 137 Cal.App.3d 419 (187 Cal.Rptr. 107)] line of cases

which support the existence of a pretrial procedure to test the district attorney's determination of ineligibility." The court then certified the transfer of the case to this court "for the purpose of settling an important question of law, and to secure uniformity of decision." (See Cal. Rules of Court, rule 63.)

## DISCUSSION

Chapter 2.5 of title 6 of part II of the Penal Code (§ 1000 et seq.) authorizes the court "to 'divert' from the normal criminal process persons who are formally charged with first-time possession of drugs [and other specified offenses], have not yet gone to trial, and are found to be suitable for treatment and rehabilitation at the local level."[1] (*People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61 [113 Cal.Rptr. 21, 520 P.2d 405].) This program serves two purposes: "First, diversion permits the courts to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction. Second, reliance on this quick and inexpensive method of disposition, when appropriate, reduces the clogging of the criminal justice system by drug abuse prosecutions and thus enables the courts to devote their limited time and resources to cases requiring full criminal processing." (*Id.* at pp. 61-62, fn. omitted.)

The process for diversion begins with a preliminary screening for eligibility conducted by the district attorney under standards prescribed by the statute. (*People* v. *Superior Court (On Tai Ho)*, *supra*, 11 Cal.3d at p. 62.)

---

[1]The drug diversion procedure presently applies "whenever a case is before any court upon an accusatory pleading for a violation of Section 11350, 11357, 11364, 11365, 11377, or 11550 of the Health and Safety Code, or Section 11358 of the Health and Safety Code if the marijuana planted, cultivated, harvested, dried, or processed is for personal use, or Section 11368 of the Health and Safety Code if the narcotic drug was secured by a fictitious prescription and is for the personal use of the defendant and was not sold or furnished to another, or Section 11370.1 of the Health and Safety Code if the amount possessed is one-half gram or less of a substance containing cocaine base, one gram or less of a substance containing cocaine, one gram or less of a substance containing heroin, one gram or less of a substance containing methamphetamine, one-eighth gram or less of a crystalline substance containing phencyclidine, one milliliter or less of a liquid substance containing phencyclidine, one-half gram or less of plant material containing phencyclidine, or one hand-rolled cigarette treated with phencyclidine, or subdivision (d) of Section 653f if the solicitation was for acts directed to personal use only, or Section 381 or subdivision (f) of Section 647 of the Penal Code, if for being under the influence of a controlled substance, or Section 4230 of the Business and Professions Code, and it appears to the district attorney that, except as provided in subdivision (b) of Section 11357 of the Health and Safety Code, all of the following [six conditions] apply to the defendant: . . ." (§ 1000, subd. (a).)

Under the statute, diversion is proper only if the district attorney determines the defendant meets these six qualifications:

"(1) The defendant has no conviction for any offense involving controlled substances prior to the alleged commission of the charged divertible offense.

"(2) The offense charged did not involve a crime of violence or threatened violence.

"(3) There is no evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision.

"(4) The defendant's record does not indicate that probation or parole has ever been revoked without thereafter being completed.

"(5) The defendant's record does not indicate that he or she has been diverted pursuant to this chapter within five years prior to the alleged commission of the charged divertible offense.

"(6) The defendant has no prior felony conviction within five years prior to the alleged commission of the charged divertible offense." (§ 1000, subd. (a).)

Section 1000, subdivision (b), provides the mechanism for making this statutory determination: "The district attorney shall review his or her file to determine whether or not paragraphs (1) to (6), inclusive, of subdivision (a) are applicable to the defendant. . . ." If the district attorney determines that defendant may be eligible for diversion, the prosecutor is required to file a declaration with the court and to advise the defendant and his or her attorney of that determination in a notification which includes various statutory information. (§ 1000, subd. (b), 1000.1.) The case then may be referred to the probation department to investigate the defendant's suitability, and the court thereafter holds a hearing to determine, among other things, "if the defendant should be diverted and referred for education, treatment, or rehabilitation." (§§ 1000.1, 1000.2.)

On the other hand, if the district attorney finds the defendant is ineligible, "the district attorney shall file with the court a declaration in writing or state for the record the grounds upon which the determination is based, and shall make this information available to the defendant and his or her attorney." (§ 1000, subd. (b).)

As originally enacted, the diversion statute purported to subject the court's decision to divert an eligible defendant to a prosecutorial veto. It originally declared that the case could not be diverted "unless the district attorney concurs" and directed that criminal proceedings must resume if the district attorney did not consent to the diversion. (Former § 1000.2.) This language was deleted in 1975. (Stats. 1975, ch. 1267, § 3, p. 3330.) In *Superior Court (On Tai Ho), supra*, 11 Cal.3d 59, the high court held this prosecutorial veto power violated the constitutional doctrine of separation of powers. The court reasoned ". . . it is clear that if the decision to divert a defendant into a rehabilitation program pursuant to Penal Code section 1000.2 is an exercise of judicial power, it cannot constitutionally be subordinated to a veto of the prosecutor." (At p. 65.) And the decision to divert, the court ruled, coming as it does after the prosecution has made its eligibility determination, is a judicial function. "By the time the case goes through the probation investigation and report prescribed by section 1000.1 and reaches the hearing mandated in section 1000.2, the prosecutorial die has long since been cast. The case is 'before the court' for disposition, and disposition is a function of the judicial power no matter what the outcome." (*Ibid.*)

But in *Sledge, supra*, 11 Cal.3d 70, a companion case, the high court held that the district attorney's preliminary determination of eligibility for diversion was not a judicial act and thus did not violate the constitutional requirement of separation of powers. The court noted the information needed to assess the eligibility factors outlined in section 1000 consists primarily of law enforcement records and reports of investigating officers and witnesses. (11 Cal.3d at pp. 73-74.) "Much of this information eventually may be imparted to the court, either in the testimony taken at the trial or in the probation report prepared after conviction. But none of it is known to the court at the time here relevant, i.e., before the trial, when the defendant seeks to invoke the diversion process. At that time, the necessary documents and reports are in the district attorney's possession or can be obtained by him." (*Id.* at p. 74.)

The *Sledge* court further noted that this information is used in different ways by the district attorney and the court. "[In a formal diversion hearing] the trial court is called upon to 'consider' the evidence submitted—i.e., to weigh its materiality, relevance, credibility, and persuasiveness, and to decide whether, in the judgment of the court, the evidence justifies the conclusion that the defendant would be benefited by diversion into a program of education, treatment or rehabilitation. These, we hold, are judicial acts. [Citation.] By contrast, in discharging his duties under section 1000 the district attorney need not decide what facts are material and relevant to eligibility, as the Legislature has specified them in the statute. Credibility is

not an issue when the information is obtained from official records and reports. And the statute leaves no room for weighing the effect of the facts: . . ." (11 Cal.3d at p. 74.)

The defendant in *Sledge* argued that special problems were posed by section 1000, subdivision (a)(3), which precludes diversion when there is evidence of other nondivertible drug offenses. He argued that in deciding whether there is evidence of a such an offense, the district attorney could rely on a mere suspicion of illegal activity and that the determination of ineligibility was not subject to judicial review. (11 Cal.3d at pp. 74-75.)

The Supreme Court rejected both claims. It reiterated that the statute requires there be "evidence" of another offense, not simply a suspicion or rumor to that effect.[2] (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 75.) In addressing defendant's argument concerning judicial review, the court held as follows: "[T]he decision of the district attorney that a defendant is ineligible on this ground is subject to judicial review at the proper time. A pretrial writ of mandate or prohibition will not lie, as the determination is purely preliminary and there is no indication the Legislature intended the prosecution to be interrupted for interlocutory review of this issue. . . . But if the defendant goes to trial and is convicted, he may raise on appeal the question whether there was 'evidence' as defined herein, of his commission of other narcotics offenses within the meaning of subsection (3) of subdivision (a); if the defendant prevails, the judgment must be set aside and the case remanded to permit the trial court to exercise its discretion to divert the defendant under the remaining portions of the statute." (*Id.* at pp. 75-76, citations and fns. omitted.)

In a footnote, the court commented: "In order for [appellate] review to be effective, of course, an adequate record is necessary. Accordingly, at the time the district attorney determines the defendant is ineligible for diversion he should serve on the defendant and file with the court a declaration stating the ground upon which that determination is based and the evidence in support thereof." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 76, fn. 6.)[3]

Summarizing, the high court later observed that "[t]aken together, *On Tai Ho* and *Sledge* establish that when a district attorney is given a role during

---

[2]The fact that this evidence may constitute hearsay is of no consequence. "In this screening process, however, the district attorney's inquiry need not be limited to information admissible at a full-fledged criminal trial. The files of the district attorney ordinarily include relevant hearsay information derived from investigations into criminal activity; yet as noted above, subdivision (b) of the statute expressly directs him to consult that source in determining eligibility for diversion." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 75.)

[3]This suggestion became a statutory requirement in 1975. (Stats. 1975, ch. 1267, § 1, p. 3328.) As we have noted in the text, the district attorney is now required to "file with the

the 'judicial phase' of a criminal proceeding, such role will violate the separation-of-powers doctrine if it accords the district attorney broad, discretionary decisionmaking authority to countermand a judicial determination, but not if it only assigns the district attorney a more limited, quasi-ministerial function." (*Davis* v. *Municipal Court* (1988) 46 Cal.3d 64, 85 [249 Cal.Rptr. 300, 757 P.2d 11].)

 Defendant contends the procedures outlined in *Sledge* do not provide adequate protection in her particular case because she did not have an opportunity at trial to present evidence challenging the district attorney's conclusion that she possessed controlled substances for sale. Because she was charged only with being under the influence of drugs, evidence relating to possession for sale was irrelevant and could not be introduced. Consequently, she claims, appellate review of the record is meaningless. She contends the appropriate means of resolving this problem is to permit pretrial review as outlined in *People* v. *Williamson* (1982) 137 Cal.App.3d 419 [187 Cal.Rptr. 107]. The appellate department agreed. Both defendant and the appellate department misread *Williamson*.

In *Williamson*, defendant was charged with cultivating marijuana (Health & Saf. Code, § 11358). Section 1000, subdivision (a), authorizes diversion when a person is charged with this offense only "if the marijuana planted, cultivated, harvested, dried or processed is for personal use . . . ." The district attorney determined the amount of marijuana involved in the case exceeded that for personal use and therefore determined that defendant was ineligible for diversion. (*People* v. *Williamson, supra,* 137 Cal.App.3d at p. 420.) Defendant pled guilty to the charged offense and then appealed, arguing the district attorney's determination invaded the province of the trial court. (*Ibid.*)

We agreed, finding the interplay of the two statutes at issue created a unique situation. We noted that while in all other instances the diversion statute simply refers to divertible offenses by their statutory designation (e.g., diversion is authorized for a violation of Health and Safety Code section 11550), in the case of cultivation of marijuana it added an additional requirement, that the cultivation be for personal use. As we explained: "An anomaly was thereby introduced into the criteria of diversion. The cultivation statute [citation] does not make the intended use of the cultivated marijuana an element of the offense; hence the qualifying condition must be determined independent of the pleadings. The grammar of the condition (*'is for personal use'*) implies that what is to be determined is an operative fact. We so conclude. But the determination of an operative fact is a judicial

---

court a declaration in writing or state for the record the grounds upon which the determination is based, and shall make this information available to the defendant and his or her attorney."

function. [Citation.] Accordingly, we look to the statute to find a place for the exercise of this function. We conclude that the determination of the intended use of the cultivated marijuana is consigned to the trial court as a part of the diversion hearing conducted pursuant to . . . section 1000.2." (*People* v. *Williamson, supra,* 137 Cal.App.3d at p. 422, italics in original; accord, *People* v. *Venghiattis* (1986) 185 Cal.App.3d 326, 333 [229 Cal.Rptr. 636].)

Under the statutory scheme, the district attorney was not, and indeed could not constitutionally have been, given the judicial task of determining whether the charged crime of cultivation of marijuana was or was not "for personal use." ▉ As we held in *Williamson,* "determining the operative fact of 'personal use' predicates the resolution of conflicting inferences of intended use, a judicial function." (137 Cal.App.3d at p. 423.) The critical point is that the marijuana statute itself does not distinguish between cultivation for personal use and cultivation for sale or other nonpersonal use. It simply declares that "[e]very person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof, except as otherwise provided by law, shall be punished by imprisonment in the state prison." (Health & Saf. Code, § 11358.) Consequently, the question to be resolved is whether in the case before the court the defendant cultivated the marijuana for personal use or for some nonpersonal use and the task of making that determination is inherently a judicial one.

We also rejected the claim in *Williamson* that the district attorney could defeat this judicial function by drawing the inference that defendant possessed the cultivated plants for sale and hence determining the accused was ineligible for diversion under subdivision (a)(3) of section 1000. "The claimed authority to determine a commercial use under subdivision (a)(3) of section 1000 thus conflicts with the judicial authority to resolve conflicting inferences of intended use under section 1000.2 since it precedes and therefore preempts, the judicial function. The judicial function must be preserved and, a fortiori, prevail." (137 Cal.App.3d at p. 423.) This is entirely consistent with the principle that the prosecutor cannot be assigned "broad, discretionary decisionmaking authority to countermand a judicial determination." (*Davis* v. *Municipal Court, supra,* 46 Cal.3d at p. 85.) It is further reflected in the holding in *People* v. *Dyas* (1979) 100 Cal.App.3d 464 [161 Cal.Rptr. 39], that evidence suppressed by the court under section 1538.5 cannot serve as the basis for a prosecutorial determination of ineligibility for diversion under section 1000, subdivision (a)(3).

The limited sweep of *Williamson* was recognized in *People* v. *McAlister* (1990) 225 Cal.App.3d 941 [275 Cal.Rptr. 229], a case virtually identical to

the one before us. There the defendant pled guilty to possession of cocaine after the district attorney determined defendant was ineligible for diversion because there was evidence he had possessed the cocaine for sale. (*Id.* at pp. 942-943.) Defendant disagreed with this assessment and argued that since there was a legitimate factual conflict whether the cocaine was possessed for sale or merely for personal use, the trial court was required to conduct a pretrial hearing to resolve the dispute before continuing with the criminal prosecution. The *McAlister* court rejected this suggestion as contrary to the Supreme Court's pronouncements in *Sledge.* (*Id.* at pp. 944-945.) Under *Sledge* and its progeny, a defendant may not raise the issue of the propriety of the district attorney's adverse determination in a pretrial proceeding. Instead, the defendant may raise the issue of whether there was evidence of other drug offenses within the meaning of subdivision (a)(3) of section 1000 on appeal from a judgment of conviction. "In sum, defendant was not entitled to pretrial judicial hearing to contest the prosecutor's determination in this case." (*McAlister, supra,* 225 Cal.App.3d at p. 944.)

In response to defendant's claim that *Williamson* authorized pretrial judicial review, the court explained: "*Williamson* is distinguishable because in that case the offense with which defendant was charged (Health & Saf. Code, § 11358 [planting, cultivating, etc., any marijuana]) did not correspond with the divertible offense (Pen. Code, § 1000, subd. (a) [planting, cultivating, etc., marijuana *for personal use*].) Due to this statutory anomaly, the Court of Appeal held that the trial court had authority to conduct an evidentiary hearing to ascertain the 'operative fact' whether the marijuana was for personal use. No such statutory anomaly exists in the present case for here the charged offense was identical with the one specified in Penal Code section 1000, subdivision (a)." (*People v. McAlister, supra,* 225 Cal.App.3d at pp. 944-945, italics in original.) As the *McAlister* court correctly perceived, *Williamson* comes into play only when the question is whether the defendant "is before any court upon an accusatory pleading for a violation of [specified offenses]." (§ 1000, subd. (a).) That question, which is not assigned to the prosecutor, requires a judicial resolution and hence a pretrial hearing.

But at least one court has suggested that *Williamson* authorizes or mandates a pretrial hearing whenever there is asserted to be some conflicting evidence concerning the disqualifying drug offense. (*People v. Paz* (1990) 217 Cal.App.3d 1209 [266 Cal.Rptr. 468]; see also *People v. Martinsen* (1987) 193 Cal.App.3d 843 [238 Cal.Rptr. 530].) After acknowledging that the district attorney's preliminary screening for eligibility under the statute is not a judicial function, the *Paz* court went on to state: "No hearing is necessary unless the determination of eligibility requires resolution of factual issues. (*People v. Williamson* (1982) 137 Cal.App.3d 419 [187 Cal.Rptr.

107].)" (217 Cal.App.3d at p. 1217.) The court concluded by noting that ". . . the district attorney's determination of ineligibility involved no fact-finding or statutory interpretation; thus it did not intrude upon any judicial function. Therefore, the court's denial of appellant's motion without a hearing was entirely proper. (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 74.)" (*Id.* at p. 1218.)

In our view, this confuses the task of the district attorney with the judicial function of the court. ■ "Subdivision (a)(3) authorizes the district attorney to perform a limited function, namely to determine whether there is 'evidence' permitting the inference that the defendant has committed a narcotic offense *other* than one listed in section 1000. This function does not involve the resolution of conflicting inferences or the determination of credibility, the hallmarks of factfinding." (*Williamson, supra,* 137 Cal.App.3d at p. 422, italics in original.) Although factfinding is a traditional judicial function, the task of the district attorney under the diversion statute is not to resolve conflicts but instead to review the evidence in his files to determine whether they show that "defendant has probably committed narcotics offenses in addition to those listed in the statute." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 75.) In making that determination, "the district attorney need not have information sufficient to prove possession for sale in order to file a declaration of diversion ineligibility." (*People* v. *McAlister, supra,* 225 Cal.App.3d at p. 945.) If there is substantial evidence to support that determination, it will be upheld on appeal, even in close cases. (*Id.* at pp. 945-946.) If there is not, then the judgment must be set aside and "the case remanded to permit the trial court to exercise its discretion to divert the defendant under the remaining portions of the statute." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 76.)

■ The fact that defendant is not charged with the disqualifying drug offense and hence has no opportunity to contest that crime before a court does not change the holding in *Sledge*. "Contrary to appellant's claim, there is no requirement that a defendant be actually charged with a disqualifying offense . . . ." (*People* v. *Covarrubias* (1993) 18 Cal.App.4th 639, 642 [22 Cal.Rptr.2d 475].) Indeed, subsection (3) of subdivision (a) of section 1000 was intended by the Legislature among other things for those "whom the district attorney cannot or does not choose to charge with trafficking." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at p. 75.) And, of course, if the defendant is charged with a disqualifying offense he is not eligible for pretrial diversion even if he is later acquitted of that offense. (*People* v. *Alonzo* (1989) 210 Cal.App.3d 466 [258 Cal.Rptr. 263]; *People* v. *Hudson* (1983) 149 Cal.App.3d 661 [197 Cal.Rptr. 36].)

For all of these reasons we hold that defendant is not entitled to a pretrial hearing to determine if the district attorney properly found she was ineligible

for diversion. To hold otherwise would be to authorize procedures explicitly forbidden under *Sledge*. Under defendant's theory, a question of "fact" could be raised about any one of the diversion eligibility requirements: a defendant could challenge whether the charged offense involved violence, whether records relied upon by the district attorney were accurate, or whether there was evidence of other drug offenses, thus necessitating pretrial review in virtually every case. Our Supreme Court rejected such a scenario by holding that a district attorney's determination of ineligibility for diversion is not subject to pretrial judicial review. (*Sledge* v. *Superior Court, supra,* 11 Cal.3d at pp. 75-76; accord, *People* v. *Covarrubias, supra,* 18 Cal.App.4th at p. 642.) That holding is binding upon us and upon the appellate department. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## DISPOSITION

The judgment of the appellate department is reversed and cause remanded to that court for further proceedings not inconsistent with this opinion.

Puglia, P. J., and Davis, J., concurred.