Filed 5/24/21

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>WILLIE DONTE ONEAL,<br><br>　　　Defendant and Appellant. | F079014<br><br>(Super. Ct. No. F17905964)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. James A. Kelley, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Willie Donte Oneal was charged with multiple counts of burglary, robbery, and related offenses arising from several incidents. After the trial court denied his motion for mental health diversion (Pen. Code, § 1001.36),[1] he pled no contest to one count of attempted second degree robbery (§§ 211, 664; count 3) and one count of first degree burglary (§§ 459, 460, subd. (a); count 4), admitted a nonparticipant was present during the burglary (§ 667.5, subd. (c)(21)), and admitted having suffered a prior strike (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)) and having served three prior prison terms (§ 667.5, subd. (b)). The remaining counts were dismissed. Defendant was sentenced to an aggregate term of 13 years, four months.

On appeal, defendant challenges the trial court's denial of his motion for mental health diversion. The court denied the motion on the grounds that defendant's mental illness was not a significant factor in his criminal behavior and he presented a risk of danger to public safety if treated in the community, both of which are statutorily disqualifying factors for participation in mental health diversion. (§ 1001.36, subd. (b)(1)(B), (b)(1)(F).) Defendant contends the court's ruling deprived him of due process because the court improperly relied on reports prepared in relation to his initial insanity plea (§§ 1026, 1027), and those reports did not support the court's finding that his mental illness was not a significant factor in his criminal behavior. He additionally contends the record does not support the court's finding that he presented a risk of danger to public safety, as defined by statute.

We conclude defendant forfeited his challenge to the court's reliance on reports prepared in relation to his insanity plea by failing to object below. Nonetheless, we exercise our discretion to reach the issue on the merits and conclude the court was permitted to consider the challenged reports, and that the reports support the court's

---

[1]    Undesignated statutory references are to the Penal Code.

finding that defendant was ineligible for mental health diversion because his schizoaffective disorder was not a significant factor in his criminal behavior. Because this finding independently supports the court's denial of defendant's motion, we conclude defendant was not prejudiced by any error in determining whether he presented a risk of danger to public safety. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with attempted first degree burglary (§§ 459, 460, subd. (a), 664; count 1), two counts of first degree burglary (§§ 459, 460, subd. (a); counts 2 & 4), attempted second degree robbery (§§ 211, 664; count 3), prowling (§ 647, subd. (h); count 5), obstruction of a police officer (§ 148, subd. (a)(1); count 6), and providing false information to a police officer (§ 148.9, subd. (a); count 7). The People additionally alleged that a nonparticipant was present during the burglaries (§ 667.5, subd. (c)(21)), that defendant had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that defendant had served three prior prison terms (§ 667.5, subd. (b)).

The allegations arose out of multiple incidents that occurred in Fresno on October 1, 2017, and October 10, 2017. Relevant here, count 3 arose from an incident on October 10, 2017, in which defendant followed a woman and grabbed her purse strap and then her purse. The victim feared for her life and believed defendant was attempting to steal her purse, although he was unsuccessful. Count 4 arose from an incident on October 1, 2017, when defendant entered the apartment of a different woman and asked to use her phone. The woman told defendant she had a man in the house and he left. When the woman later went outside to walk her dog, defendant confronted the woman

and offered her $200 to use the phone. The woman told him she was going to call the police and defendant left.[2]

Defendant initially pled not guilty and not guilty by reason of insanity. (§ 1026.) The court appointed two experts, psychiatrist Howard Terrell and forensic psychologist Richard Kendall, to examine defendant. (§§ 1026, 1027.) Both evaluators concluded defendant was legally sane at the time he committed the offenses. Relevant here, Terrell opined that defendant suffered from "Other Psychotic Disorder" (boldface omitted) and an unspecified personality disorder. Terrell noted that, at the time of the offenses, defendant had been off his usual psychotropic medications for a matter of weeks and had been using methamphetamine. Terrell opined, "His mental illness at the time of the crimes was most likely a combination of chronic and acute methamphetamine abuse as well as his underlying psychiatric pathology." Terrell continued,

> "Despite being mentally ill at the time of the crimes, [defendant] is unable to provide any information to indicate that his hallucinations or other psychotic thought processes were responsible for him committing the multiple crimes he is now accused of. [¶] He claims to have no memory of auditory hallucinations or other psychotic thought processes that would have caused him to commit robbery, burglary, prowling, resisting officers[,] or any of the other crimes he is currently charged with . . . ."

Kendall opined that defendant suffered from schizoaffective disorder, antisocial personality disorder, methamphetamine use disorder, cocaine use disorder, cannabis use disorder, and alcohol use disorder. Kendall opined,

> "The negative behavior the defendant engaged in during the controlling offense was not . . . the result of a mental illness. [Defendant] has a history of engaging in burglary and other property offenses in order to fuel his drug addiction. Based upon the defendant's admission (in the interview) and based upon his history of criminal conduct, his proclivity for burglary and

---

[2] The parties stipulated that the police reports provided a factual basis for defendant's eventual plea. The factual background is therefore taken from the police reports, as summarized by the probation department in the probation report.

theft correlates with his drug addiction and willingness to violate the rights of others, to support his drug habit."

Kendall further noted that, during his interview with defendant, defendant "was candid and acknowledged that his behavior was primarily influenced by his drug usage."

After being held to answer, defendant brought a motion for mental health diversion pursuant to the recently enacted sections 1001.35 and 1001.36. (See Stats. 2018, ch. 34, § 24.) With the motion, defendant submitted a report by psychologist Richard Blak, who opined that defendant suffered from schizoaffective disorder, substance use disorder, and antisocial personality disorder, and that his schizoaffective disorder "was linked in a causal way" to the charged offenses. Blak opined that defendant's "mental disorder played a significant role in the commission of the charged offenses, this is noted relative to his demeanor, as observed and witnessed by victims and witnesses as well as law enforcement at the time of contact. [¶] It is the opinion of this writer that the defendant's symptoms motivated the behavior . . . ." The People, relying in part on Terrell's and Kendall's reports, opposed the motion.

Following a hearing, the court found defendant ineligible for mental health diversion and denied the motion. The court found, "based on the evidence supplied, that the defendant's mental illness was not a significant factor in his criminal behavior." The court further found "that if [defendant] were allowed to participate in the diversion program, he would be [a] risk to the community based on his behavior prior."

Thereafter, defendant entered pleas of no contest to counts 3 and 4, admitted that a nonparticipant was present during the burglary, and admitted the prior strike and three prior prison term enhancements. The remaining counts were dismissed. Defendant was sentenced on count 4 to a term of 12 years, consisting of the aggravated term of six years, doubled due to his prior strike. On count 3, he was sentenced to a consecutive term of one year, four months, consisting of one-third the midterm, doubled due to the prior strike. The court struck the prior prison term enhancements.

Defendant filed a timely notice of appeal. He subsequently requested, and was granted, a certificate of probable cause.

## DISCUSSION

### I. THE MENTAL HEALTH DIVERSION STATUTE

Section 1001.36, the purported mental health diversion statute, became effective on June 27, 2018. (Stats. 2018, ch. 34, § 24.) Our Supreme Court recently summarized the purposes of and requirements for pretrial mental health diversion under the statute as follows:

> "Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .' (§ 1001.36, subd. (c).) The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)

> "As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)-(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017-2018 Reg. Sess.) . . . to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)

6.

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion.[3] (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626-627.)

## II.     Standard of Review

The mental health diversion statute affords the trial court discretion to grant or deny diversion if the defendant meets the statutory eligibility requirements. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449 (*Moine*); § 1001.36, subds. (a), (b)(1) [court "may" grant diversion if all eligibility criteria are met].) A court abuses its discretion when its decision exceeds the bounds of reason or is so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Recently, in *Moine*, the reviewing court held that the court's determination on one of the eligibility factors – whether the defendant would pose an unreasonable risk of danger to public safety if treated in the community – likewise is reviewed for abuse of

---

**3**     Subdivision (b)(3) of section 1001.36 provides, "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." At the time of the hearing on defendant's motion for mental health diversion, this provision permitting the court to require the defendant to make a prima facie eligibility determination did not exist. (Former § 1001.36, added by Stats. 2018, ch. 34, § 24, eff. June 27, 2018.)

discretion.  (*Moine*, *supra*, 62 Cal.App.5th at pp. 448-449.)  In so doing, *Moine* relied in part on decisions interpreting similar language from section 1170.18.  (*Moine*, at pp. 448-449] [citing *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242 (*Jefferson*); *People v. Hall* (2016) 247 Cal.App.4th 1255, 1264 (*Hall*).)  *Jefferson* and *Hall*, as well as section 1170.18 itself, make clear that the determination of dangerousness is a discretionary determination for the court.  (§ 1170.18, subd. (b) [providing for resentencing "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety"]; see *Jefferson*, at p. 242; *Hall*, at p. 1264.)

*Moine* did not address the eligibility factor at issue here, i.e., whether the defendant's disorder played a significant role in the commission of the charged offense. (*Moine*, *supra*, 62 Cal.App.5th at pp. 448-449.)  Nor do the parties provide argument on the standard to be applied to this determination.[4]  The relevant subsection of section 1001.36 requires the court to review "relevant and credible evidence" to determine whether "the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense."  (§ 1001.36, subd. (b)(1)(B).)  If the court is then "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense" and the other eligibility criteria are met, the court may grant pretrial diversion.  (*Ibid.*)  This process of reviewing evidence and making conclusions based thereon describes a quintessential fact-finding process.  We will uphold the trial court's factual findings if supported by substantial evidence.[5]  (*People v. Cromer* (2001) 24 Cal.4th 889, 893-894.)

---

**4**     Defendant and the People suggest only generally that a trial court's denial of a motion for mental health diversion is reviewed for abuse of discretion.  They do not address our review of the individual eligibility criteria.

**5**     Furthermore, even if the court's ultimate determination of this eligibility factor can be understood to fall within the court's discretionary authority, we determine whether the court abused its discretion in light of the facts as found.

### III. RELIANCE ON REPORTS BY TERRELL AND KENDALL

Defendant argues the court violated his due process rights by relying on reports prepared by Terrell and Kendall in relation to defendant's insanity plea, and the reports did not support the court's finding that defendant's mental illness was not a significant factor in his criminal behavior. Although defendant forfeited his challenge to the court's consideration of the reports, we exercise our discretion to reach this issue on the merits in light of the lack of decisional authority interpreting the mental health diversion statute. As we explain, we conclude the reports were relevant and support the court's finding.

#### A. Forfeiture

Defendant did not object to the court's consideration of Terrell's and Kendall's reports. To the contrary, he relied on those reports in his written motion for mental health diversion, arguing that they supported a conclusion that he suffered from psychotic disorder and/or schizoaffective disorder. At the hearing on the motion, defense counsel suggested these were "not the right report[s]" for the court to rely on. However, when pressed by the court as to whether the reports could be considered, defense counsel stated, "[I]t's not for me to say what the Court can consider or not. It's been part of this file forever." The court ultimately concluded it could consider the reports, but noted the lack of statutory or decisional authority in that regard and invited the parties to challenge the decision. Defense counsel then clarified he was "not objecting to [the court] considering the [section] 1026 report," but instead suggested the court "use it with caution."

Based on the foregoing, any challenge to the court's consideration of Terrell's and Kendall's reports was plainly forfeited. (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) Additionally, because the court invited objection and argument from counsel on this point, we reject defendant's suggestion that an objection would have been futile or would have "accomplished nothing."

9.

Although the failure to challenge an erroneous ruling in the trial court generally forfeits the right to raise the issue on appeal, a reviewing court has discretion to consider a forfeited issue that presents a pure question of law. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-888, fn. 7.) The question of whether the mental health diversion statute permits consideration of reports prepared in relation to an insanity plea is such a question. As no published decision has addressed the evidence a court may rely on in considering a defendant's eligibility for mental health diversion, we will exercise our discretion to address this issue on the merits.

## B.     Terrell's and Kendall's Reports were Properly Considered

Defendant asks us to announce a "per se rule" (boldface omitted) prohibiting a court from considering psychological assessments relating to a defendant's insanity plea in determining whether a defendant is qualified for mental health diversion. We conclude such a rule is not supported by the mental health diversion statute.

A report prepared by a court appointed psychiatrist or psychologist in relation to a defendant's insanity plea must include, but is not limited to, "the psychological history of the defendant, the facts surrounding the commission of the acts forming the basis for the present charge used by the psychiatrist or psychologist in making his or her examination of the defendant, the present psychological or psychiatric symptoms of the defendant, if any, the substance abuse history of the defendant, the substance use history of the defendant on the day of the offense, a review of the police report for the offense, and any other credible and relevant material reasonably necessary to describe the facts of the offense." (§ 1027, subd. (b).) The purpose of such report is to assist the trier of fact in determining whether the defendant "was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." (§ 25, subd. (b).) This purpose differs from the purpose of mental health diversion. (See *People v. Frahs*, *supra*, 9 Cal.5th at p. 626.) Moreover, section 1027 does not require a court appointed psychiatrist or psychologist to address the

10.

precise requirements for mental health diversion. (Compare § 1027, subd. (b) with § 1001.36, subd. (b)(1).)

Nonetheless, when determining whether a defendant's mental disorder was a significant factor in the commission of the charged offense for purposes of mental health diversion, section 1001.36 broadly permits the trial court to consider "*any relevant and credible evidence,* including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, *records or reports by qualified medical experts,* or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(1)(B), italics added.) Thus, whether a court may consider a report prepared in relation to a defendant's insanity plea when evaluating a defendant's eligibility for mental health diversion ultimately turns on the relevance of that report in determining whether defendant's mental disorder was a significant factor in the commission of the charged offense.

Evidence is relevant if it has any tendency in reason to prove a disputed material fact. (Evid. Code, § 210.) A trial court's determination regarding relevance is reviewed for abuse of discretion. (*People v. Panah* (2005) 35 Cal.4th 395, 474.) Here, both Terrell and Kendall attributed defendant's commission of the charged offenses to drug use, rather than a psychotic or schizoaffective disorder. Terrell and Kendall rendered their opinions after considering a wide array of materials, such as police reports, prison medical records, a transcript of the preliminary hearing, communication with and documents provided by defense counsel, and their own clinical interviews of defendant. Their conclusions bore directly on, and had a tendency to prove, a disputed question of material fact, specifically whether defendant's mental disorder was a significant factor in his commission of the offenses. The court therefore did not abuse its discretion in concluding the reports were relevant.

11.

**C. The Reports Factually Support the Court's Finding**

The court found defendant's mental disorder was not a significant factor in the commission of the charged offenses, and therefore found defendant ineligible for mental health diversion. This finding is supported by substantial evidence.

To grant pretrial diversion, the court must be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).) In this regard, the court must conclude "that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense." (*Ibid.*) Here, both Terrell and Kendall opined that defendant's psychotic or schizoaffective disorder was not responsible for, or a motivating factor in, defendant's commission of the offenses. Terrell noted, "[Defendant] is unable to provide any information to indicate that his hallucinations or other psychotic thought processes were responsible for him committing the multiple crimes he is now accused of. [¶] He claims to have no memory of auditory hallucinations or other psychotic thought processes that would have caused him to commit robbery, burglary, prowling, resisting officers[,] or any of the other crimes he is currently charged with . . . ." Kendall opined, "The negative behavior the defendant engaged in during the controlling offense was not . . . the result of a mental illness." This evidence was sufficient for the court to conclude that defendant's psychotic or schizoaffective disorder did not substantially contribute to defendant's commission of the offenses.[6]

---

**6** In his reply brief, defendant argues for the first time that his substance use disorders qualified him for mental health diversion. This argument was not presented in the trial court and is therefore forfeited. (See *People v. Partida*, *supra*, 37 Cal.4th at pp. 433-434.) Additionally, "[t]he argument is untimely because it is asserted for the first time in the reply brief." (*In re Luke H.* (2013) 221 Cal.App.4th 1082, 1090.) We therefore decline to address it.

12.

We acknowledge that defendant's expert reached a different conclusion. Blak opined that defendant's schizoaffective disorder "played a significant role in the commission of the charged offenses." He based this conclusion on defendant's "demeanor, as observed and witnessed by victims and witnesses as well as law enforcement at the time of contact." His conclusions appeared to be based primarily on testimony from the preliminary hearing that indicated defendant had a "blank look" or " 'stare' " during the commission of the offenses.[7] We also note that, unlike Terrell and Kendall, Blak did not engage defendant in a clinical interview or address the role of defendant's substance use in his criminal behavior. To the extent the court credited the People's experts over defendant's, we note that it generally is not an abuse of discretion for the trial court to give more credit to one expert's opinion than to another's. (*People v. Venghiattis* (1986) 185 Cal.App.3d 326, 333.)

Ultimately, it was for the trial court to resolve this conflict in the evidence. For the reasons stated, we conclude substantial evidence supports the trial court's finding that defendant's psychotic or schizoaffective disorder was not a significant factor in the commission of the charged offenses. Accordingly, the court properly denied defendant's motion for mental health diversion.

## IV. RISK OF DANGER TO PUBLIC SAFETY

The court also denied defendant's motion for mental health diversion on the ground defendant presented a risk of danger to public safety "based on his behavior prior." Defendant contends this finding is unsupported by the record. The People argue we need not reach this issue because the court's ruling is supported on another ground, specifically its finding that defendant's mental illness was not a significant factor in his crimes. We agree with the People.

---

[7] Meanwhile, Terrell's and Kendall's reports attributed defendant's "strange" or "bizarre" behavior during the offenses to his substance use.

13.

Section 1001.36 excludes from eligibility for mental health diversion a defendant who poses an unreasonable risk of danger to public safety, as defined in section 1170.18. (§ 1001.36, subd. (b)(1)(F).)  Section 1170.18 defines "unreasonable risk of danger to public safety" to mean "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)  "The cited subdivision of section 667 identifies eight types of particularly serious or violent felonies, known colloquially as 'super strikes.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 351.)

Here, it is undisputed that defendant's criminal history does not involve any of the felonies commonly referred to as super strikes.  (§ 667, subd. (e)(2)(C)(iv).)  It therefore is unclear how the court determined defendant's "behavior prior" suggested he presented an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community.  (See *Moine*, *supra*, 62 Cal.App.5th at pp. 450-451 [concluding the record did not support a finding of dangerousness under § 1001.36, subd. (b)(1)(F), where neither the defendant's past convictions nor pending charges involved super-strike offenses].)  Nonetheless, even if we assume the court's finding of dangerousness is not supported by the record, defendant is not entitled to reversal.  As we explained above, defendant was ineligible for mental health diversion based on the court's finding that his mental illness was not a significant factor in his criminal behavior, which finding is supported by substantial evidence.  This finding independently supports the court's ruling.

## **DISPOSITION**

The judgment is affirmed.


DETJEN, Acting P.J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.